IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

FILED

OCT 27 2016

MARCELLAS HOFFMAN )

     Plaintiff )    Case No.

v.    )

D.COYLE,et al., )   **1: 1 6 CV 0 0 1 6 1 7** ☐ SAB **PC**

    Defendants )

_____ )

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

## CIVIL COMPLAINT

### 1. Jurisdiction

Jurisdiction of this Court is invoked under pursuant to Bivens
v. Six Unknown Named Federal Agents 403 U.S. 388 (1971).
Plaintiff has exhausted all administrative remedies pursuant
to 42 U.S.C. §1997e(a) PLRA by timely filing the
administrative remedy and placing it in the hands of staff for
mailing while being held in the SHU when he received the
Regions Director response which was slid under his cell door
on 8-8-18 Plaintiff mailed his Administrative Remedy to the
Central Office the same day with four pages of his (BP-9)(BP-
10)(BP-11). (see attached staff verification as exhibit (a))

RECEIVED

OCT 27 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

### II. Plaintiff

The Plaintiff's Marcellas Hoffman Reg.No.40369-050, is a
federal prisoner housed at United States Penitentiary USP
Atwater at the time of filing of this complaint.

### III. Defendants

The defendant D.Coyle,is an employee at the United States
Penitentiary Atwater California, and maintain employment at

the prison.

IV The defendant Warden Matevoisain is an employee at the United States Penitentiary Atwater California and maintain employment at the prison

V. The defendant Preston, is an employee at the United States Penitentiary Atwater California and maintain employment at the prison.

VI. The defendant L.T Hayes is an employee at the United States Penitentiary Atwater California and maintain employment at the prison.

VII. The defendant SIA investigator Fields is an employee at the United States Penitentiary Atwater California and maintain employment at the prison.

VIII. FACTS

On or about January 7,2016 cook supervisor Coyle took adverse action against me and stated to me "You are a "snitch" you told Madan I cut the pies for the Holiday meal in eights instead of six". On January 7,2016 the Food Administrator (Mr.Madan) had asked Plaintiff whether or not cook supervisor Coyle had cut the the Holiday pies in eights. Plaintiff showed the Administrator a pie and stated that "yes these pies were cut in eighths instead of six".

Plaintiff had no idea that the Administrator had instructed cook supervisor Coyle to cut the Holiday pies in six instead of eighth. Because of answering the Administrator's question Cook supervisor Coyle retaliated against Plaintiff and went around in the Food Service Department falsely labelling

Plaintiff as a "snitch" to other inmates (see attached
affidavits) in order to subject Plaintiff to life-threatening
retaliation by other inmates. Plaintiff was pulled up on by
other inmates and was asked,"why is Coyle running around
telling everybody that you snitched on him about some pies".
After Plaintiff heard this, Plaintiff went to the Food
Administrator Madan and informed him that Cook supervisor
Coyle were running around in the Food Service Department
labelling Plaintiff as a "snitch" because of answering the
Administrators question as to whether or not the pies were cut
into eights. The Administrator called cook supervisor Coyle
into his office and questioned him about his misconduct.
Cook supervisor Coyle explained that he was only "playing"
with Plaintiff by calling him a "snitch". Plaintiff do not
play games with staff or other inmates by calling them a
"snitch" because those are fighting words and inmates could
get stabbed for calling someone such names in prison.


One week before this incident on January 1,2016 Cook
supervisor Coyle called Plaintiff a "snitch" because Plaintiff
had written and prepared a Food Service Proposal to try and
help Food Service save money and to help prevent waste.(See
attached Proposal) The defendant Coyle violated Plaintiff's
First Amendment and Eighth Amendment rights by retailing
against Plaintiff for writing a Food Service Proposal to help
prevent waste and falsely labelled Plaintiff a "snitch" to
other inmates which was defendant direct intentions of causing
harm to Plaintiff and slandering Plaintiff name. Plaintiff
informed the Warden,SIS L.T. Hayes,SIS investigator Fields,

all failed to take action to prevent any potential harm toward
plaintiff and failed to take action against defendant Coyle
and Preston.

IX. LEGAL CLAIM

Defendant Coyle acting under color of federal law violated
Plaintiff's First Amendment and Eighth amendment rights by
falsely labelling Plaintiff as a "snitch" to other inmates in
order to subject Plaintiff to retaliation by other inmates for
answering a work related question by the Food Service
Administrator, and violated Plaintiff's First amendment rights
by retaliating against Plaintiff for exercising his right to
write a Food Service Proposal to help prevent waste.

X. CAUSE OF ACTION

(Count I) Defendant Coyle acting under color of federal law is
being sued in his individual capacity and is guilty of
violating Plaintiff's First Amendment and Eighth Amendment
rights by retailing and falsely labelling Plaintiff as a
"snitch" to other inmates in order to subject Plaintiff to
retaliation by other inmates for answering a work related
question and for writing a Food Service Proposal to help
prevent waste.

(Count II) Because of defendant Coyle's action Plaintiff was
threatened by other inmates and his life was put into danger
as a result of the false labelling by the defendant.

(Count III) Because of defendant Coyle's tremendous capability
to influence other staff defendant Preston acting under color
of federal law is being sued in his individual capacity and is
guilty of violating Plaintiff's First Amendment Rights and
Eighth Amendment Rights by falsely labelling Plaintiff as a

"snitch" and retailing against Plaintiff for writing a Food
Service Proposal to help prevent waste. on 2-26-16 Defendant
Preston,falsely labelled Plaintiff as a "snitch" to another
Officer [DeCarie] in front of other inmates,by
stating,"inmates are snitching in the staff dining hall and
writing officers names down who are not paying for meals"
Defendant Preston was spreading this false rumor to slander
Plaintiff's name to Officer [DeCarie] and other staff members.
Plaintiff stated to Defendant Preston," I am not snitching on
no one, if you are talking about me" The defendant Preston
used obscene language towards Plaintiff and stated,"Fuck you
Hoffman,you ain't nobody in here,I heard about you, you are
snitching" Defendant Preston than started labelling Plaintiff
as a "snitch" and retaliated against Plaintiff and filed a
false incident report claiming that Plaintiff had threaten
him by stating,"I'll whoop your ass". This false statement by
the defendant resulted in Plaintiff being unconstitutionally
being confined in punitive segregation for five days until it
was proven to be a false statement and incident report.(See
attached exhibit incident report)  Plaintiff was than
harassed,discriminated against and falsely labelled as a
"snitch" by defendant.Preston while still working as a staff
Dining Hall Cook. Defendant Preston offered to pay other
inmates to harm Plaintiff and to have Plaintiff removed from
the Food Service Department because of writing and preparing a
Food Service Proposal. Plaintiff life was put into danger as a
result of being falsely labelled as a "snitch" by the defendan
ts. (see attached affidavits)

(COUNT IV) Warden Matevoisain acting under color of federal

law is being sued in his individual capacity and is guilty of violating Plaintiff's First Amendment and Eighth Amendment rights when he act with deliberate indifference to the substantial risk from the threat that could've caused Plaintiff serious harm by knowing that Officer Coyle and Officer Preston had falsely labelled Plaintiff as a snitch to other inmates and staff and disregarded that risk to Plaintiff health and safety.

(COUNT VI) (SIS) Special Investigator Supervisor L.T. Hayes acting under color of federal law is being sued in his individual capacity and is guilty of violating Plaintiff's First Amendment and Eighth Amendment rights when he act with deliberate indifference to the substantial risk from the threat that could've cause Plaintiff serious harm by knowing that Officer Coyle and Officer Preston had falsely labelled Plaintiff as a snitch to other inmates and staff and disregarded that risk to Plaintiff health and safety.

(COUNT VII) The defendant (SIA) Special Investigator Agent Fields acting under color of federal law is being sued in his individual capacity and is guilty of violating Plaintiff's First Amendment and Eighth Amendment rights when he act with deliberate indifference to the substantial risk from the threat that could caused Plaintiff serious harm by knowing that Officer Coyle and Officer Preston had falsely labelled Plaintiff as a snitch to other inmates and staff and disregard the risk to Plaintiff's health and safety

XI RELIEF

Plaintiff seeks the following relief (1) Plaintiff request this Honorable Court order the defendants to immediately

respond to the otherwise plead to the Complaint, within 20 days of service of this Complaint.(2) Plaintiff seek from the defendants jointly or serverly both statutory and compensatory damages for the violation of Plaintiff's First Amendment rights. (3) Plaintiff seeks from the defendants, the compensatory and punitive damages for Plaintiff Civil Rights and Constitutional Rights violations (One Hundred Thousand Dollars) $100,000 dollars.(4) Such other and further relief as this Court deems just and proper. And to allow Plaintiff to proceed In-Forma-Paiperis,and direct the officers of the Court to serve all processes.

XII. LEAVE TO AMEND COMPLAINT

Since Plaintiff is proceeding pro se his pleadings must be construed liberally and held less stringent standards than those applied to the pleadings drafted by attorney. See Haines v.Kerner,404 US 519 (1972). Also, pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Plaintiff request this Honorable Court to grant him leave to file amended Complaint, in case he comes with discovery of evidence and or other claims and substitution or addition of defendants.

Respectfully submitted,

*Marcellas Hoffman*

Marcellas Hoffman

Reg.No.40369-050

United States Penitentiary

P.O.Box 019001

Atwater,CA 95301

Dated:_____,2016


### VERIFICATION

I declare under the penalty of perjury,pursuant to Title

28,United states Code, Section 1746,that the foregoing is true

and correct to the best of my information,knowledge and

belief.


Executed this 24day of October,2016,in Atwater California.

*Marcellas Hoffman*

Marcellas Hoffman

Reg.No.40369-050

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

MARCELLAS HOFFMAN    )

      Plaintiff   )      Case No.

v.                   )

D.COYLE,et al.,      )

      Defendants )

_____)

CERTIFICATE OF SERVICE BY U.S. MAIL

The undersigned here by certifies that he is inmate Marcellas

Hoffman Reg.No.40369050 and is a person of such age and

discretion to be competent to serve papers.

   that on October 24, 2016, he served a copy:

     OF THE COMPLAINT

by placing said copy in posted envelope addressed to the

person(s) hereinafter named, at the palace(s) and address(es)

state below,which the last known addresss(es), and by

depositing said envelope and contents in the United States

Mail at Fresno,California.

Addressee(s):

Officer Coyle

United States Penitentiary

USP Atwater

P.O.Box 019001

Atwater,CA 95301

Officer Preston

United States Penitentiary

P.O. Box 019001

Atwater,CA 95301

Warden Matevoisain          Marcellas Hoffman

United States Penitentiary

P.O.Box 019001

Atwater,CA 95301

SIS L.T. Hayes

United States Penitentiary

P.O.Box 019001

Atwater,CA95301

SIA Fields

United States Penitentiary

P.O.Box 019001

Atwater,CA95301

# Attachment 1

# Attachment 1



U.S. Department of Justice

Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California  95301*

October 21, 2016

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:        M. PADGETT, CSW

SUBJECT:        Inmate Hoffman, Marcellus Reg. No. 40369-050

On September 8, 2016, inmate Hoffman received administrative remedies which required responses due by August 22, 2016. Due to receiving the reports late, he did not have sufficient time to turn in his response to the Office of the General Counsel.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 22, 2016

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MARCELLAS HOFFMAN, 40369-050
      ATWATER USP    UNT: 2B    QTR: Z01-107LAD
      P.O. BOX 019001
      ATWATER,  CA 95301

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 849332-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED  : SEPTEMBER 8, 2016
SUBJECT 1      : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: ALL FOUR PAGES OF YOUR (BP-9) (BP-10) (BP-11) FORM MUST BE
                 LEGIBLE AND WORDED THE SAME. PHOTOCOPIES OF THE FORM WILL
                 NOT BE ACCEPTED.

REJECT REASON 2: PROVIDE STAFF VERIFICATION STATING REASON UNTIMELY FILING
                 WAS NOT YOUR FAULT.

REJECT REASON 3: SEE REMARKS.

REMARKS        : APPEAL RECEIVED 49 DAYS AFTER REGIONS RESPONSE
                 SEEK ASSITANCE WITH MEMO FROM UNIT TEAM.

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: HOFFMAN MARCELLAS . 40369-050 SHU A-Range Atwater USP
LAST NAME, FIRST, MIDDLE INITIAL REG. NO. UNIT INSTITUTION

**Part A - REASON FOR APPEAL**

cemmate Hoffman file this appeal for the following reasons.
The response to his BP-10 by Mary M. Mitchell, Regional
Director because the referral back to the (e.g. SIS, Warden's
office, etc,) will and have not been properly address,
by the SIS or the Warden. They both refuse to hold
this staff accountable for his misconduct of falsly
labeling me a "Snitch" in order to subject me to harm
by other inmates. I request that this staff be held
accountable for his misconduct.

8/6/16
DATE                                    Marcelles Hoffman
                                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

SEP  8 2016

Administrative Remedy Section
Federal Bureau of Prisons

_____                        _____
DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: _____

**Part C - RECEIPT**
                                        CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT          INSTITUTION

SUBJECT: _____

_____                        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
DATE

UPN LVN                                                              BP-231(13)
                                                                     JUNE 2002

119

MARCELLAS HOFFMAN, 40369-050
ATWATER USP    UNT: 2B    QTR: Z06-119LAD
P.O. BOX 019001
ATWATER,  CA 95301

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Hoffman, Marcello         46369-057         2B Cl1219   USP Atwater
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

I filed this Administrative Remedy Appeal because
the Warden's response was not properly answered
my complaint of regional Cook Supervisor Staff
to falsely labelling me as a "Snitch" in order
to subject me to retaliation by other inmates.
See Attached

3-3-16                                      _Marcello Hoffman_
        DATE                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____                                _____
        DATE                                      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**

                                                 CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

_____                                _____
        DATE                                      SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                          BP-230(13)
                                                                 JUNE 2002

849332-R1
USP Atwater

This is in response to your Administrative Remedy Appeal of the Warden's decision dated March 30, 2016, in which you allege staff misconduct.  Specifically, you allege a staff member called you a snitch in order to subject you to harm by other inmates.  You do not specify a relief.

The Bureau of Prisons takes allegations of staff misconduct seriously and they are thoroughly investigated.  Therefore, your allegation has been referred to the appropriate office for investigation.  However, information concerning staff conduct and performance is protected by the Privacy Act, 5 USC § 552a. If you have any additional allegations, they can similarly be conveyed to your local staff (e.g., SIS, Warden's Office, etc.,) for further review and referral as appropriate.

This is provided for informational purposes only.  If dissatisfied with this response, you may appeal to the Office of the General Counsel, Bureau of Prisons, 320 First Street, N.W., Washington, D.C., 20534.  Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_7/22/16_
Date

Mary M. Mitchell, Regional Director

Inmate Hoffman files this Administrative Remedy Appeal for the following reason:

The Warden (Mr.Matervousian's) response does not properly answer my complaint against Cook supervisor Coyle for falsely labelling me a "snitch" in order to subject me to retaliation by other inmates. The general response given by the Warden are nothing more then saying" Ok I hear you". There is no accountability against Cook supervisor Coyle for his misconduct. Cook supervisor Coyle's misconduct posing a substantial risk of serious harm to me should be the main focus and not just saying,"The Bureau of Prisons takes allegations of misconduct seriously,and makes every attempt to hold staff to the highest standards". There has been no real attempt to hold this staff Cook supervisor Coyle to a highest standard for his misconduct. Labeling a prisoner a "snitch" violate a prisoner's constitutional rights under the Eighth Amendment> Cook supervisor Coyle retaliated aginst me for answering a work related question by the Food Service Administrator (Madan) and falsely labelled me a "snitch" in order to have other inmates harm me as a result. For these reasons I file this Appeal.

Inmate Hoffman files this Administrative Remedy Appeal for the following reason:

The Warden (Mr.Matervousian's) response does not properly answer my complaint against Cook supervisor Coyle for falsely labelling me a "snitch" in order to subject me to retaliation by other inmates. The general response given by the Warden are nothing more then saying" Ok I hear you". There is no accountability against Cook supervisor Coyle for his misconduct. Cook supervisor Coyle's misconduct posing a substantial risk of serious harm to me should be the main focus and not just saying,"The Bureau of Prisons takes allegations of misconduct seriously,and makes every attempt to hold staff to the highest standards". There has been no real attempt to hold this staff Cook supervisor Coyle to a highest standard for his misconduct. Labeling a prisoner a "snitch" violate a prisoner's constitutional rights under the Eighth Amendment> Cook supervisor Coyle retaliated aginst me for answering a work related question by the Food Service Administrator (Madan) and falsely labelled me a "snitch" in order to have other inmates harm me as a result. For these reasons I file this Appeal.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Hoffman Marcellas | 40369-050   2D | USP Atwater |
|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO.   UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

Cook Supervisor Coyle went around in the Food Service Department labelling Hoffman as a "Snitch" to other inmates in order to subject Hoffman to life-threatening retaliation by other inmates. Cook Supervisor Coyle also labelled Hoffman as a "Snitch" because Hoffman had prepared a Food Service Proposal to try to help Food Service save money and to help prevent waste. Please see attached.

| 1/15/16 | |
|---|---|
| DATE | Marcellas X Hoffman |
| | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

|  | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE.                                    CASE NUMBER: 849332-F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|---|---|

USP LVN

BP-229(13)
APRIL 1982

Administrative Remedy Appeal(BP-9)

Inmate Marcellas Hoffman files this Administrative Remedy Appeal for the following reasons: Hoffman is not satisfied with the general response by the Unit Team to his (BP-8) . On January 7,2016, while working in Food Service, Cook supervisor Coyle stated to me," You are a snitch, you told Madan I cut the pies for the Holiday Meal in eights instead of six". On January 6,2016 the Food Administrator (Mr.Madan) had asked Hoffman whether or not Cook supervisor Coyle cut the Holiday pies in eights. Hoffman showed the Administrator (Mr.Madan) a pie and stated that,"yes these pies were cut in eighths instead of six". Hoffman had no idea that the Administrator (Mr.Madan) had instructed Cook Supervisor Coyle to cut the Holiday pies in six. Cook supervisor Coyle went around in the Food Service Department labelling Hoffman as a "snitch" to other inmates in order to subject Hoffman to life-threatening retaliation by other inmates. Hoffman was asked by other inmates, "why is Coyle running around telling everybody that you snitched on him about some pies". After Hoffman heard this, he went to the Food Administrator (Mr.Madan) and informed him that Cook supervisor Coyle were running around labelling Hoffman as a "snitch" because of answering the Administrators questions as to whether or not the pies were cut into eights. The Administrator (Mr.Madan) called Cook supervisor Coyle into his office and questioned him about his misconduct. Cook supervisor Coyle explained that he was only "playing" with inmate Hoffman by calling him a "snitch". Hoffman do not play games with staff or other inmates by calling them a "snitch" because those are fighting words or someone could get stabbed for calling someone such names. See Valandingham v. Bojorquez, 866 F.2d 1135,1137 (9th Cir.1989)( allegation that prison officers labelled inmate a "snitch" in order to subject inmate to retaliation by other inmates could support cause of action under §1983). Also it should be noted a week befoe this incident,Cook Supervisor Coyle called Hoffman a "snitch" because Hoffman had prepared a Food Service Proposal to try to help Food Service save money and to help prevent waste. Cook supervisor Coyle stated," What you are snitching about how much food we throw away".

Well known is the harshness of prison "justice" administered by prisoners against each other, including infamous means for setting of scores based on jealousies,gang loyalties, and petty grievances. Cook supervisor Coyle's misconduct of falsely labelling Hoffman a "snitch" to other inmates was his direct intentions of causing harm to Hoffman and slandering Hoffman's name. Cook Supervisor Coyle has been told by the Food Administrator (Mr.Madan) on many occasions to cut the Holiday pies in six so that each inmate could get a sufficient serving of pie. But Cook Supervisor Coyle had refuse to do so, despite the fact, that he had been instructed to do so. As a result of Cook supervisor Coyle's refusal to follow instructions by the Administrator (Mr.Madan),the inmate population complained to the Warden (Mr.Matervousian) about the pies being cut in eights instead of six without sufficient servings of pie.

Hoffman respectfully request that Cook supervisor Coyle be he ld accountable Pursuant to Program Statement 3420.09. #5 #9 #14 #15 #24 #28 #34 #48 #54 and be reassigned to another Department to keep him from putting other inmates and staff's lives in danger. This writer also states that there should be no discrimination or retaliation of any kind against Hoffman as a result of the filing of this charge against Cook supervisor Coyle because Hoffman answered a work-related question by the Food Administrator.

*Marcellas Hoffman*

Administrative Remedy Appeal(BP-9)

Inmate Marcellas Hoffman files this Administrative Remedy Appeal for the following reasons: Hoffman is not satisfied with the general response by the Unit Team to his (BP-8) . On January 7,2016, while working in Food Service, Cook supervisor Coyle stated to me," You are a snitch, you told Madan I cut the pies for the Holiday Meal in eights instead of six". On January 6,2016 the Food Administrator (Mr.Madan) had asked Hoffman whether or not Cook supervisor Coyle cut the Holiday pies in eights. Hoffman showed the Administrator (Mr.Madan) a pie and stated that,"yes these pies were cut in eighths instead of six". Hoffman had no idea that the Administrator (Mr.Madan) had instructed Cook Supervisor Coyle to cut the Holiday pies in six. Cook supervisor Coyle went around in the Food Service Department labelling Hoffman as a "snitch" to other inmates in order to subject Hoffman to life-threatening retaliation by other inmates. Hoffman was asked by other inmates, "why is Coyle running around telling everybody that you snitched on him about some pies". After Hoffman heard this, he went to the Food Administrator (Mr.Madan) and informed him that Cook supervisor Coyle were running around labelling Hoffman as a "snitch" because of answering the Administrators questions as to whether or not the pies were cut into eights. The Administrator (Mr.Madan) called Cook supervisor Coyle into his office and questioned him about his misconduct. Cook supervisor Coyle explained that he was only "playing" with inmate Hoffman by calling him a "snitch". Hoffman do not play games with staff or other inmates by calling them a "snitch" because those are fighting words or someone could get stabbed for calling someone such names. See Valandingham v. Bojorquez, 866 F.2d 1135,1137 (9th Cir.1989)( allegation that prison officers labelled inmate a "snitch" in order to subject inmate to retaliation by other inmates could support cause of action under §1983). Also it should be noted a week befoe this incident,Cook Supervisor Coyle called Hoffman a "snitch" because Hoffman had prepared a Food Service Proposal to try to help Food Service save money and to help prevent waste. Cook supervisor Coyle stated," What you are snitching about how much food we throw away".

Well known is the harshness of prison "justice" administered by prisoners against each other, including infamous means for setting of scores based on jealousies,gang loyalties, and petty grievances. Cook supervisor Coyle's misconduct of falsely labelling Hoffman a "snitch" to other inmates was his direct intentions of causing harm to Hoffman and slandering Hoffman's name. Cook Supervisor Coyle has been told by the Food Administrator (Mr.Madan) on many occasions to cut the Holiday pies in six so that each inmate could get a sufficient serving of pie. But Cook Supervisor Coyle had refuse to do so, despite the fact, that he had been instructed to do so. As a result of Cook supervisor Coyle's refusal to follow instructions by the Administrator (Mr.Madan),the inmate population complained to the Warden (Mr.Matervousian) about the pies being cut in eights instead of six without sufficient servings of pie.

Hoffman respectfully request that Cook supervisor Coyle be he ld accountable Pursuant to Program Statement 3420.09. #5 #9 #14 #15 #24 #28 #34 #48 #54 and be reassigned to another Department to keep him from putting other inmates and staff's lives in danger. This writer also states that there should be no discrimination or retaliation of any kind against Hoffman as a result of the filing of this charge against Cook supervisor Coyle because Hoffman answered a work-related question by the Food Administrator.

*Marcellas Hoffman*

Administrative Remedy Appeal(BP-9)

Inmate Marcellas Hoffman files this Administrative Remedy Appeal for the following reasons: Hoffman is not satisfied with the general response by the Unit Team to his (BP-8) . On January 7,2016, while working in Food Service, Cook supervisor Coyle stated to me," You are a snitch, you told Madan I cut the pies for the Holiday Meal in eights instead of six". On January 6,2016 the Food Administrator (Mr.Madan) had asked Hoffman whether or not Cook supervisor Coyle cut the Holiday pies in eights. Hoffman showed the Administrator (Mr.Madan) a pie and stated that,"yes these pies were cut in eighths instead of six". Hoffman had no idea that the Administrator (Mr.Madan) had instructed Cook Supervisor Coyle to cut the Holiday pies in six. Cook supervisor Coyle went around in the Food Service Department labelling Hoffman as a "snitch" to other inmates in order to subject Hoffman to life-threatening retaliation by other inmates. Hoffman was asked by other inmates, "why is Coyle running around telling everybody that you snitched on him about some pies". After Hoffman heard this, he went to the Food Administrator (Mr.Madan) and informed him that Cook supervisor Coyle were running around labelling Hoffman as a "snitch" because of answering the Administrators questions as to whether or not the pies were cut into eights. The Administrator (Mr.Madan) called Cook supervisor Coyle into his office and questioned him about his misconduct. Cook supervisor Coyle explained that he was only "playing" with inmate Hoffman by calling him a "snitch". Hoffman do not play games with staff or other inmates by calling them a "snitch" because those are fighting words or someone could get stabbed for calling someone such names. See Valandingham v. Bojorquez, 866 F.2d 1135,1137 (9th Cir.1989)( allegation that prison officers labelled inmate a "snitch" in order to subject inmate to retaliation by other inmates could support cause of action under §1983). Also it should be noted a week befoe this incident,Cook Supervisor Coyle called Hoffman a "snitch" because Hoffman had prepared a Food Service Proposal to try to help Food Service save money and to help prevent waste. Cook supervisor Coyle stated," What you are snitching about how much food we throw away".

Well known is the harshness of prison "justice" administered by prisoners against each other, including infamous means for setting of scores based on jealousies,gang loyalties, and petty grievances. Cook supervisor Coyle's misconduct of falsely labelling Hoffman a "snitch" to other inmates was his direct intentions of causing harm to Hoffman and slandering Hoffman's name. Cook Supervisor Coyle has been told by the Food Administrator (Mr.Madan) on many occasions to cut the Holiday pies in six so that each inmate could get a sufficient serving of pie. But Cook Supervisor Coyle had refuse to do so, despite the fact, that he had been instructed to do so. As a result of Cook supervisor Coyle's refusal to follow instructions by the Administrator (Mr.Madan),the inmate population complained to the Warden (Mr.Matervousian) about the pies being cut in eights instead of six without sufficient servings of pie.

Hoffman respectfully request that Cook supervisor Coyle be he ld accountable Pursuant to Program Statement 3420.09. #5 #9 #14 #15 #24 #28 #34 #48 #54 and be reassigned to another Department to keep him from putting other inmates and staff's lives in danger. This writer also states that there should be no discrimination or retaliation of any kind against Hoffman as a result of the filing of this charge against Cook supervisor Coyle because Hoffman answered a work-related question by the Food Administrator.

*Marcellas Hoffman*

United States Penitentiary

Atwater, California

## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM

**NOTE TO INMATE:** You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9 [BP-229 (13)], you **MUST** attempt to informally resolve your complaint through your Correctional Counselor. Briefly state **ONE** complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted. The **ORIGINAL** BP-8 must be attached should you choose to file a BP-9.

Issued By: _____(Initials of Correctional Counselor)

Date Issued to the Inmate: _1·8·16_

**INMATE'S COMMENTS:**

1. Complaint: _Cook Supervisor Coyle labelled Hoffman a "Snitch" in order to subject Hoffman to life-threatening retaliation by other inmates. See Attached 1 page_

2. Efforts you have made to informally resolve: _Talk to Food Service Admin. Mr. Madan / and Mr. Lewis._

3. Names of staff you contacted: _Mr Madan Food Service Administrator_

Date Returned to Correctional Counselor: _1·5·16_

_____          _40369050_          _1/8/2016_
Inmate's Signature          Reg. Number          Date

**CORRECTIONAL COUNSELOR'S COMMENTS:**

Efforts made to informally resolve and staff contacted: _All allegations & staff mscondudt are taken seriously by the BOP. This has been forwarded to a Department Head._

Date BP-9 Issued: _____

_____
Correctional Counselor

_____
Unit Manager (Date)

# Attachment 2



# Inmate Marcellas Hoffman's Food Service Proposal

Inmate Marcellas Hoffman #40369-050

Respectfully submits this proposal to help the Food Service Department save money by applying and using the "Lean Six Sigma" principles and methodologies to help prevent waste and to improve quality of foods in the Food Service Department and the Staff Dinning Hall with the hope to give Staff a more incentive to purchase their meals at the $2.25 price designated by policy.

To help motivate staff to pay the $2.25, we first must find the areas where the Food Service Department needs and goals overlap individual needs, goals, and capabilities. We can then set up win-win agreements. Once these are established, staff could govern or supervise themselves in terms of that agreement. These are the first four conditions of empowerment:

1) Win-Win Agreement
2) Self-Supervision
3) Helpful Structure and Systems
4) Accountability

Essentially the win-win agreement is a psychological contract between staff and the Food Service Department. It represents a clear mutual understanding and commitment regarding expectations in five areas: first, staff desire for quality meals, second, agreement to pay for those meals; third, Food Service goals of providing those meals, fourth, accountabilities; and fifth, consequences for not paying for the meals.

To better understand how to set up and manage the win-win agreement; let's review each of these five steps.

First the staff desired quantity and quality meals for their money.

Second an automated meal ticket (debit card) or cash meal tickets are already in place for buying meal tickets.

Third Food Service will provide staff with quality meals for their money.

Fourth the Food Service Administrator (Mr. Madan) will hold staff accountable for the win-win agreement. If there is no accountability, some staff may gradually lose their sense of responsibility and start blaming circumstances or other people for not paying for meals. But when staff participates in setting standards of accepting payments for meals, they feel a deep sense of responsibility to provide a meal that is worth paying for. When the trust level is high, staff will be much tougher on themselves than the Food Administrator will ever dare be to provide meals such as these.

Fifth, there will be consequences when the desired results of the Food Service Department agreements are not achieved by staff for not paying for their meals. Such as not proving the Staff Dinning Hall with meals or cutting back on extra foods or a staff member being terminated from the Staff Dinning Hall for a certain period of time.

These five features of a win-win agreement basically cover what a staff needs to understand before coming into the Staff Dinning Hall to eat good quality meals for only $2.25. Win-win is a human resource principle that recognizes that staff is capable of self-direction and self-control and govern themselves to do whatever is necessary within the policies to achieve the desired results.

If we aren't trustworthy, how can we have trust on an interpersonal level? And if we don't have trust at the interpersonal level. How are we going to empower others with a sense of stewardship for results?

Now being a good cook doesn't just happen. It starts with hard work to obtain the knowledge to become a good cook. And that knowledge must run deeper than just a recipe on a page or a recipe card, no matter how much or little cooking experience you have. Successful cooking starts with knowing the ingredients you work with and understanding the tools and equipment you use. Good cooking techniques bring those two ideas you need to blend it all into great foods.

Inmate Hoffman is working towards obtaining an associate degree in culinary arts through a correspondence course with Adams State University and would like to use his mental creativity, and physical abilities and talents for the betterment of the Food Service Department here at USP Atwater. Simply enough, that is the reason for this proposal,

We start with a visual guide describing and explaining Step-by-step using Process Mapping such as Spaghetti Diagrams to identify and understand a process flow to illustrate the need for change within the Food Service Department, and to help reduce waste and at a substantial cost saving to the government and the Food Service Department and to improve quality of a better product, service and process. Hoffman will also use a USP Atwater National Weekly Menu to illustrate how he will use extra foods and leftovers from previous meals and meals from the weekly menu to create satisfying and delicious foods for the Staff Dinning Hall and the inmate population that the Food Service Department would otherwise throw away on a daily basis.

Inmate Hoffman will also offer advice and ideas on saving money for the Food Service Department and the Bureau of Prisons by helping the Department to avoid expensive mistakes and to ensure that bad buys are kept to a minimum. For example, why buy a cheap set of handheld blenders when just two or three good ones will do and will last forever? What are the most useful small appliances to buy? Good quality machines are expensive, so we need to choose wisely.

# Data Collection Plan

| Product | Price Per Case/Bag | Loss Per Day | Loss Per Month | Loss Per Year |
|---|---|---|---|---|
| **Produce/Fruits** | | | | |
| Apples | $18.00 | $90.00 | $2,700.00 | $32,400.00 |
| Cantaloupe | $8.50 | $34.00 | $1,020.00 | $12,240.00 |
| Honey Dew | $8.50 | $34.00 | $1,020.00 | $12,240.00 |
| Bananas | $16.50 | $99.00 | $2,970.00 | $35,640.00 |
| **Produce/Vegetables** | | | | |
| Potaotes | $4.00 | $40.00 | $1,200.00 | $14,400.00 |
| Carrots | $15.00 | $30.00 | $900.00 | $10,800.00 |
| Celery | $27.50 | $55.00 | $1,650.00 | $19,800.00 |
| Onions | $8.00 | $16.00 | $480.00 | $5,760.00 |
| Cucumbers | $18.50 | $37.00 | $1,110.00 | $13,320.00 |
| Green Peppers | $11.00 | $33.00 | $990.00 | $11,880.00 |
| **Breads** | | | | |
| Wheat Bread | $2.30 | $69.00 | $2,070.00 | $24,840.00 |
| Tortillas | $1.25 | $56.25 | $1,687.50 | $20,250.00 |
| Hamburger Bus | $1.50 | $45.00 | $1,350.00 | $16,200.00 |
| Hot Dog Buns | $1.50 | $45.00 | $1,350.00 | $16,200.00 |
| Hogie Rolls | $1.50 | $45.00 | $1,350.00 | $16,200.00 |
| **Legumes** | | | | |
| Pinto Beans | $18.00 | $27.00 | $810.00 | $9,720.00 |
| Navy Beans | $18.00 | $27.00 | $810.00 | $9,720.00 |
| Black Beans | $18.00 | $27.00 | $810.00 | $9,720.00 |
| Lentils | $18.00 | $27.00 | $810.00 | $9,720.00 |



# DMAIC METHODOLOGY

**D**efine

**M**easure

**A**nalyze

**I**mprove

**C**ontrol

What does our data tell us? We have developed a sophisticated diagnostic tool to help Food Service gather and organize data and make sense of what's happening inside and outside of the Department. For instance, our Over Production flow is not effective and is causing the Department and the Government to spend more money for past purchases than the original price, and purchasing things that decrease in value over time instead of things that appreciate. If we limit what we spend on such items and replace them as seldom as possible, we are on our way to minimizing our use of wasted money. Inmate Hoffman recommends this for these reasons. Here are the alternatives. Here are the consequences. And Here is the problem I've come to understand, along with the causes of the problem. Certain universal principles and purposes must be observed in order to obtain total quality and service and products. When one of our governing values is total quality, we will care not only about the quality of our products and services, but also about the quality of inmates and staff's health. The paradigm of total quality is continuous improvement. People and the department should not be content to stay where they are, no matter how successful or unsuccessful they seem to be. Quality begins with an understanding of our inmate and staff needs and expectation, but ultimately it means meeting or exceeding those needs and expectations. These are the things that we need to do in Food Service to help eliminate wastes.

1. Create constancy of purpose towards improvement of production and service, with the aim to provide quality meals.

2. Eliminate the need for mass production, but building quality into the product meals initially.

3. Improve constantly and forever the system of production and service, to improve quality and productivity, and thus constantly decrease costs.

4. Institute better job training, to develop skills in new hires, to assist management to understand all processes of the Department

5. Institute an action plan, and put everyone in the Food Service Department to work to accomplish the transformation.

6. End the practice of awarding business on the basis of price tag alone. Instead, minimize total cost. Move towards a single supplier for one item, based on long- term relationship of loyalty and trust.

7. Teach, exemplify, and reinforce

Inmate Hoffman now will use the National Weekly Menu to illustrate how he would like to recycle leftovers from previous meals and other foods that Food to create satisfying and delicious Foods for the Staff Dinning Hall and the inmate population that the Food service Department Service would otherwise throw away on a daily basis.

Federal Bureau of Prisons

Menu Type:   Mainline FY 2016

**Weekly Menu**

ATWATER USP

Date Range: 11/29/2015  to  12/5/2015

| LUNCH | LUNCH | LUNCH | LUNCH | LUNCH | LUNCH | LUNCH |
|---|---|---|---|---|---|---|
| Cheese Omelet or | ♥Vegetable Soup | Chicken Patty Sandwich | ♥Hamburger | BBQ Chicken | Breaded Fish Sand or | Ckn Cheese Steak or |
| ♥Plain Omelet | ♥Tuna Salad | ♥♥or Soy Chicken Patty | ♥or Soy Burger | ♥or Baked Chicken | ♥Baked Fish | ♥Chicken Salad |
| ♥Oven Brown Potatoes | # or Cheese Sand W/ | ♥Potato Salad | Sliced Cheese | ♥or Cottage Cheese | ♥or Soy Burger w/ | # or Cheese Sand W/ |
| Cream Gravy | Salad Dressing | ♥Pinto Beans | Turkey Bacon (2) | ♥Potato Salad | Salad Dressing | Salad Dressing |
| Biscuit (2) or | ♥Lettuce Leaf | ♥Lettuce/Tomato/Onion | ♥Baked Potato | ♥Carrots | ♥Steamed Rice | ♥Italian Pasta Salad |
| ♥Whole Wheat Bread | ♥Italian Pasta Salad | Salad Dressing | Potato Chips or | ♥Whole Wheat Bread | ♥Green Peas | ♥Carrots |
| and ♥Jelly (2) | ♥Whole Wheat Bread (2) | ♥WW Hamburger Bun | ♥Shredded Lettuce | ♥Margarine Pat | ♥Coleslaw | ♥WW Hot Dog Bun |
| ♥Fruit | ♥Margarine Pat | ♥Margarine Pat | ♥Catsup & Mustard | Dessert or | ♥WW Hamburger Bun | ♥Margarine Pat |
| ♥Margarine Pat | ♥Fruit | Dessert or | Pickles | ♥Fruit | ♥Margarine Pat | Dessert or |
| ♥Beverage | ♥Beverage | ♥Fruit | Salad Dressing | ♥Beverage | Tartar Sauce | ♥Fruit |
| | | ♥Beverage | ♥WW Hamburger Bun | | ♥Fruit | ♥Beverage |
| | | | ♥Margarine Pat | | ♥Beverage | |
| | | | ♥Fruit | | | |
| | | | ♥Beverage | | | |



Recycle Apples
for Pies

Recycle for Soups

Recycle for Salads

Recycle for Soups

Recycle Beans and Rice
For no Meat Salads

Recycle Beans and Rice

These actions steps are not "quick-fix" techniques, they are based on sound, time-prove principles of growth and change. To bring about changes in people and in the department is not simple, or if it is simple, it is not easy. We are dealing with momentum, with attitudes, with skill levels, with perceptions, and with established patterns. People tend to cling to old ways, old habits. And old styles and habits are hard to change. But involvement is the key to implementing change and increasing commitment. We need to be more interested and involving all people in Food Service to prevent waste.

So if 50 Staff members paid $2.25 per meal per day  Hoffman only ask that this proposal be approved.

| Daily Cost | Weekly Cost | Monthly Cost | Yearly Cost |
| --- | --- | --- | --- |
| $2.25 | $15.75 | $63.00 | $821.25 |

# Attachment

RECEIPT - ADMINISTRATIVE REMEDY

DATE: AUGUST 4, 2016

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MARCELLAS HOFFMAN, 40369-050
      ATWATER USP    UNT: 2B    QTR: Z06-119LAD

THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID        : 857733-A1
DATE RECEIVED    : JULY 5, 2016
RESPONSE DUE     : SEPTEMBER 3, 2016
SUBJECT 1        : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2        :
INCIDENT RPT NO: 2820679

2B-108
03/15/16

BP-A0304
AUG 11

**DISCIPLINE HEARING OFFICER REPORT**   CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Institution: USP ATWATER | Incident Report Number: 2820679 | |
| NAME OF INMATE: HOFFMAN, MARCELLAS | REG. NO. 40369-050 | UNIT: 2b |
| Date of Incident Report: 2.26.16 | Offense Code. 203/312 | |
| Date of Incident · 2.26.16 | | |

Summary of Charges·
THREATENING BODILY HARM/INSOLENCE TOWARD STAFF

**I.     NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date)
   2.26.16            at (time) 1838            (by staff member) VILLEGAS

B  The DHO Hearing was held on (date) 3.2.16            at (time) 1030

C. The inmate was advised of the rights before the DHO by (staff member).
   LAZURIAK
   on (date) 2.29.16            and a copy of the advisement of rights form is attached.

**II.    STAFF REPRESENTATIVE**

A. Inmate waived right to staff representative.   Yes  ✓  No ____

B. Inmate requested staff representative and N/A                            appeared.

C  Requested staff representative declined or could not appear but inmate was advised of
   option to postpone hearing to obtain another staff representative with the result that·
   N/A

D. Staff representative N/A                            was appointed.

**III.   PRESENTATION OF EVIDENCE**

A. Inmate denies the charges(s)

B. Summary of Inmate Statement:
   "I did not threaten the staff, I did cuss at him as he provoked me. He called me a snitch."

C. Witnesses:

1  The inmate requested witnesses.   Yes  ✓  No ____

2  The following persons were called as witness at this hearing and appeared:
   Staff Member S. Decarie was present over the telephone and provided a written statement.

3. A summary of the testimony of each witness is attached: Yes

4. The following persons requested were not called for the reason(s) given:
   N/A

5  Unavailable witnesses were requested to submit written statements and those statements
   received were considered   N/A

D. Documentary Evidence· In addition to the Incident Report and Investigation, the DHO
   considered the following documents:  SUPPORT MEMO

E. Confidential information was used by DHO in support of his findings, but was not revealed
   to the inmate.  The confidential information was documented in a separate report.  The
   confidential information has been (confidential informants have been) determined to be
   reliable because  N/A

| HOFFMAN, MARCELLAS | 40369-050 | 2820679 | 3.2.16 |
| PDF | Prescribed by P5270 | | Replaces BP-304(52) of JAN 88 |

IV.  FINDINGS OF THE DHO

___   A  The act was committed as charged            ___   C. No prohibited act was committed:

✓   B  The following act was committed                  Expunge according to Inmate
                                                                              discipline PS.

312- INSOLENCE TOWARDS A STAFF MEMBER

V  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations,
written documents, etc.)
The inmate's due process rights were read and reviewed by the DHO to the inmate. The DHO confirmed the inmate
received a copy of his incident report, DID want to call witnesses, did NOT want a staff representative, and had no
documentary evidence to submit. The inmate understood his due process rights, and was prepared to proceed with the
disciplinary hearing  The inmate signed a new BP-A0294 and elected not to have a Staff Representative but did want a
Staff member to serve as a witness.  The staff witness was present over the teleconference and submitted a written
statement for the record

The officer's written report notes that, "On 02/26/2016 at approximately 1010am I was having a conversation with Food
Service Assistance Mr. DeCarie  At which time inmate HOFFMAN 40369-050 remarked that I should stop talking about
him  I told inmate HOFFMAN to stay out of my conversation. Inmate HOFFMAN continued  I gave inmate HOFFMAN a
direct order to stop  At which time inmate HOFFMAN said, "Fuck You, check my paperwork", I said what did you say and
he stated "Fuck You, stop messing with me or I'll whoop your ass." Inmate HOFFMAN was escorted to the holding tank
and then escorted to the Special Housing Unit (SHU) without further incident. Inmate HOFFMAN was identified through
BOPWARE and his identification card."

The DHO finds that inmate HOFFMAN, MARCELLAS, Reg. No. 40369-050, did not commit the prohibited act of
Threatening Bodily Harm, which is a violation of Code 203. The DHO determined that through testimony of the staff
witness that HOFFMAN was merely culpable of the Code 312, Insolence Towards a Staff Member.

The DHO relied on the officer's written report, support staff memo and the staff witnesses live testimony at the hearing
The staff witness said, "I was present during the entire incident, I did not hear inmate HOFFMAN state, "I'll whoop your
ass to the staff member." However, inmate Hoffman was insolent to the writer as he cussed him out by saying, "Fuck You
Preston take me to the holding cell." During the DHO hearing, HOFFMAN stated he admitted cussing out the staff by
stating, "I did not threaten the staff, I did cuss at him as he provoked me. He called me a snitch." The DHO weighed this
statement for the threatening charge and deemed it consistent with what the staff witness stated at the hearing and
expunged the code 203 violation. However, the DHO deemed inmate HOFFMANS statement, "I did cuss him out" as his
own admission that he was insolent to the staff member and made inappropriate remarks to the staff as corroborated by
the staff witness DeCarie  The DHO considered inmate HOFFMANS and his staff witness statement and deemed inmate
HOFFMAN responsible for the Code 312, Insolence Towards a Staff Member.

Based upon the greater weight of the evidence (the officer's written report, support staff memo, inmates statement), the
DHO is convinced that inmate HOFFMAN, MARCELLAS, Reg. No. 40369-050, committed the prohibited act of insolence
Towards a Staff Member, which is a violation of Code 312.  The DHO originally sanctioned the inmate to a $10.00
monetary fine however, when typing the DHO report realized the monetary fine was not applicable for inmate
HOFFMANS case due to his date of sentencing as such it was expunged from the record.

VI  SANCTION OR ACTION TAKEN
DIS GCT 7 DAYS
30 DS (SUSPENDED PEND 30 DAYS CLEAR CONDUCT)
LP COMM 90 DAYS
LP VISIT 90 DAYS

VII  REASON FOR SANCTION OR ACTION TAKEN
CODE(s): 312- Insolence towards a staff member
Contemptuously rude or impertinent in behavior or speech toward a staff member

Insolence Towards a Staff Member promotes disrespect for the staff member and seriously detracts from the staff
member's ability to maintain control of his assigned area of responsibility. Sanctions listed above were imposed in an
effort to impress on you the gravity of your actions and hopefully deter you from such actions in the future.

Program Statement 5270.09, Inmate Discipline, states that after careful consideration of all relevant factors, the DHO may
impose a loss of privilege sanction not directly related to the offense, provided there is a belief that the imposed sanction

is viewed as having a significant impact on the inmate's future behavior  The DHO believes that other sanctions will/have been futile or have had insufficient impact on your behavior  Therefore, the DHO has imposed sanctions in an effort to deter your behavior.

The loss of privileges are punitive sanctions administered in an effort to impact and/or discourage any future disruptive behavior.  These disciplinary sanctions administered are done so in proportion to the frequency and severity of the prohibited act code violation committed and are in compliance with guidelines set forth in P.S. 5270.09 Inmate Discipline.

VIII.   APPEAL RIGHTS: YES     The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action   The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.

| IX.    Discipline Hearing Officer | | |
|---|---|---|
| Printed Name<br>C. LIWAG | Signature | Date<br>3-14-2016 |

Delivered to Inmate  3-14-2016 via institutional mail

Date:   05/26/2016                                                                                    Location: ATW
Time:   05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

**Survey Title:** ICP Inmate Survey

**Survey Description:** The purpose for the Institution Character Profile (ICP) survey is to help the Regional Director to evaluate current issues at the institution and to recognize what the institution is doing well. Your responses to the survey are confident and voluntary. This survey is your opportunity to be heard. However, if you do not feel comfortable completing the survey you can opt out at this time. Thank you for your participation.

Question 1.  Please select location

Response:
- ☐ FCI 1
- ☐ FCI 2
- ☐ FCI 3 (FSL or LSCI)
- ☒ USP 1
- ☐ USP 2
- ☐ ADX
- ☐ FMC/ USMCFP
- ☐ FDC/MDC/MCC
- ☐ FTC
- ☐ Camp

Question 2.  Primary Language: What is your primary language?

Response:
- ☒ English/ Inglés
- ☐ Spanish/ Español
- ☐ Other/Otro

Question 3.  If English or Spanish are not your primary language, what is your primary language?

Response: English is my primar

Question 4.  Safety: Please rate the level of safety for inmates at the following locations and times:

|                      | Safe | Neutral | Unsafe |
|----------------------|------|---------|--------|
| Housing units        | ○    | ○       | ●      |
| Health Services/      | ○    | ●       | ○      |
| Compound             | ○    | ●       | ○      |
| Recreation buildings | ○    | ●       | ○      |

HOFFMAN, MARCELLAS 40369050    Inmate #: 40369050

Date:   05/26/2016                                                            Location: ATW
Time:   05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 5.  Safety Continued

|  | Safe | Neutral | Unsafe |
|---|---|---|---|
| Recreation yard | ○ | ● | ○ |
| Laundry | ○ | ● | ○ |
| Commissary | ○ | ● | ○ |
| Special Housing Unit | ○ | ○ | ● |

Question 6.  Safety (Continued)

|  | Safe | Neutral | Unsafe |
|---|---|---|---|
| Facilities department | ○ | ● | ○ |
| Safety department | ○ | ● | ○ |
| Food Service | ○ | ● | ○ |
| Psychology Services | ○ | ● | ○ |

Question 7.  Safety Continued

|  | Safe | Neutral | Unsafe |
|---|---|---|---|
| Chapel | ○ | ● | ○ |
| UNICOR | ○ | ● | ○ |
| Education | ○ | ● | ○ |
| Receiving and Discharge/ | ○ | ● | ○ |

Question 8.  Safety Continued

|  | Safe | Neutral | Unsafe |
|---|---|---|---|
| Visiting room | ● | ○ | ○ |
| Bus or other transport | ○ | ● | ○ |

HOFFMAN, MARCELLAS  Inmate #: 40369050

Date: 05/26/2016                                                           Location: ATW
Time: 05:15:58 PM

# Federal Bureau of Prisons
## TRULINCS Survey
### Personal Inmate Information

Question 9.  Safety Continued

| | Safe | Neutral | Unsafe |
|---|---|---|---|
| Morning 12:00 A.M.-8:00AM | ○ | ● | ○ |
| Days 8: A.M. to 4:00 P.M. | ○ | ● | ○ |
| Eves 4:00 P.M. - 12:00 PM | ○ | ● | ○ |
| Weekends and holidays | ○ | ● | ○ |

Question 10.  Please explain unsafe areas.

Response: Whiling working in food Service as a Staff Dining Hall Cook, I have Officer Preston keep trying to have other inmates harm me because he do not like me, I have told the Warden,Captain,AW, and the Food Administartor about this staff misconduct. He keep harassing me and trying to have other inmate harm me.

Question 11.  Is there a recent situation that has lowered your view of safety?

Response: Yes! Officer Preston trying to pay other ibnmates to harm me.

Question 12.  Quality of Service/Professionalism of Staff: Please rate each department on their professionalism and level of service.

| | Good | Neutral | Poor | N/A |
|---|---|---|---|---|
| Executive Staff | ● | ○ | ○ | ○ |
| Correctional Services | ○ | ○ | ● | ○ |
| DHO Disciplinary Hearing | ○ | ● | ○ | ○ |
| Unit Management | ● | ○ | ○ | ○ |

Question 13.  Quality of Service/Professionalism of Staff (Continued)

| | Good | Neutral | Poor | N/A |
|---|---|---|---|---|
| Health Services | ● | ○ | ○ | ○ |
| Chronic Care | ● | ○ | ○ | ○ |
| Dental Services | ● | ○ | ○ | ○ |
| Visiting | ● | ○ | ○ | ○ |

Date:   05/26/2016                                                                                    Location: ATW
Time:   05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 14.  Quality of Service/Professionalism of Staff: (Continued)

|                | Good | Neutral | Poor | N/A |
|----------------|------|---------|------|-----|
| Food Service   | ○    | ○       | ●    | ○   |
| Education      | ●    | ○       | ○    | ○   |
| Recreation     | ●    | ○       | ○    | ○   |
| Laundry        | ●    | ○       | ○    | ○   |

Question 15.  Quality of Service/Professionalism of Staff:(Continued)

|                            | Good | Neutral | Poor | N/A |
|----------------------------|------|---------|------|-----|
| Commissary                 | ●    | ○       | ○    | ○   |
| Special Housing Unit (SHU  | ○    | ○       | ●    | ○   |
| Facilities department      | ●    | ○       | ○    | ○   |
| Safety department          | ●    | ○       | ○    | ○   |

Question 16.  Quality of Service/Professionalism of Staff: (Continued)

|                        | Good | Neutral | Poor | N/A |
|------------------------|------|---------|------|-----|
| Psychology             | ●    | ○       | ○    | ○   |
| DAP Drug Abuse Program | ●    | ○       | ○    | ○   |
| Religious services     | ●    | ○       | ○    | ○   |
| UNICOR                 | ●    | ○       | ○    | ○   |

Question 17.  Quality of Service/Professionalism of Staff: (Continued)

|                          | Good | Neutral | Poor | N/A |
|--------------------------|------|---------|------|-----|
| Correctional Systems R&D | ○    | ●       | ○    | ○   |
| Inmate telephones        | ●    | ○       | ○    | ○   |
| Inmate mail              | ○    | ●       | ○    | ○   |

HOFFMAN, MARCELLAS 44369050   Inmate #: 40369050

Date:   05/26/2016                                                                     Location: ATW
Time:   05:15:58 PM

# Federal Bureau of Prisons
## TRULINCS Survey
### Personal Inmate Information

**Question 18.** Please describe any departments where you feel service quality and professionalism are NOT good

**Response:** I feel that Officer Preston are trying to pay other inmates to harm me and pay them to remove me from my work area because he don't like me. He has made statement infront of other staff and inmates about removing me and giving inmates a reward to do so. This staff has a history of lying on inmates and making threates against them. Someone needs to do something about this staff misconduct!

**Question 19.** Staff Accessibility: Staff make themselves available to address my issues.

**Response:**
- ☐ Strongly Agree
- ☐ Agree
- ☐ Neutral
- ☐ Disagree
- ☒ Strongly disagree

**Question 20.** Please explain your rating of staff accessibility.

**Response:** I have told many staff about Officer Preston misconduct, and no one has done anything to correct his misconduct. I had to file adminirtrative Remedy aginst this staff member and still no one have corrected his miscond.

**Question 21.** Staff Fairness: Staff treat inmates fairly at this facility?

**Response:**
- ☐ Strongly Agree/
- ☐ Agree
- ☐ Neutral
- ☐ Disagree
- ☒ Strongly Disagree

**Question 22.** Please explain your rating of how staff treat inmates at this facility

**Response:** staff do not treat inmates fairly because if one staff memeber is not following policy another staff will back this staff memember up even though he is in the wrong. There is no accountablity!

**Question 23.** Helpful Staff: Please provide the names and titles of the staff you find most helpful and explain why.

**Response:** My Counsleor Mr. Lyons. He has always tried to help me when I have a problem with another staff memeber. But he could only do but so much. Someone needs to look into this misconduct by Officer preston trying to pay other inmate to harm me.

Date:   05/26/2016                                                          Location: ATW
Time:   05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 24.  Food Service rarely runs out of food before I eat

   Response:
   ☐ Strongly Agree
   ☐ Agree
   ☒ Neutral
   ☐ Disagree
   ☐ Strongly Disagree

Question 25.  Food Service follows the National Menu

   Response:
   ☐ Strongly Agree
   ☐ Agree
   ☐ Neutral
   ☒ Disagree
   ☐ Strongly Disagree

Question 26.  Food quality is good overall

   Response:
   ☐ Strongly Agree
   ☐ Agree
   ☐ Neutral
   ☒ Disagree
   ☐ Strongly Disagree

Question 27.  Food that is supposed to be hot is hot, food that is supposed to be cold is cold

   Response:
   ☐ Strongly Agree
   ☐ Agree
   ☐ Neutral
   ☒ Disagree
   ☐ Strongly Disagree

Question 28.  Please describe any meals that can be of better quality. Please also list any items that run out often.

   Response: All the meals could be better, it just need to properly train the cooks and have cooks that really know how to cook. I have tried my best to help the Food service Department provide the inmate Population with a more better quality of Food. I have submitted proposals about how to help with making the food of a better quality. I have been working for Food service for 7 years .

HOFFMAN, MARCELLAS   Inmate #: 40369050

Date:  05/26/2016                                                                                          Location: ATW
Time:  05:15:58 PM

# Federal Bureau of Prisons
# TRULINCS Survey
# Personal Inmate Information

Question 29.  Commissary Stock: Commissary normally has the items I want or a reasonable substitute when it is my turn to shop?

Response:

☐ Strongly Agree
☐ Agree
☒ Neutral
☐ Disagree
☐ Strongly Disagree

Question 30.  If the commissary runs out of items, what type of items?

Response:  The most hot items such as cakes and meats.

Question 31.  Commissary Variety: There is an adequate variety of items in the commissary?

Response:

☐ Strongly Agree
☐ Agree
☒ Neutral
☐ Disagree
☐ Strongly Disagree

Question 32.  Do You Receive Visits: Have you received visits at this institution?

Response:

☐ Yes
☒ No (Please describe why you have not received visits in the next question)

Question 33.  If you answered no in the previous question, Please describe why you have not received visits?

Response:  I am from Washington DC and its just to far away from home to pay for a visit. I have been here for 7 years and may had a visit two times.

Question 34.  Visiting Concerns: Do you or your family have any concerns about the visiting program?

Response:

☐ No
☒ Yes (Please describe in the next question)

Question 35.  Please describe any visiting concerns below

Response:  Officers sometimes harass the visitors thinking everyone trying to bring into the institution,drugs so sometimes everyone family is harass as a result of some inmates visitors.

HOFFMAN, MARCELLAS  Inmate #:40369050

Date: 05/26/2016                                                                    Location: ATW
Time: 05:15:58 PM

# Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 36. Staying Informed: How helpful are the following?

| | Helpful | Neutral | Unhelpful |
|---|---|---|---|
| bulletin boards | ● | ○ | ○ |
| Admission and Orientation | ● | ○ | ○ |
| A&O handbook | ● | ○ | ○ |
| Town halls | ● | ○ | ○ |

Question 37. Overall I am well informed about issues concerning the institution, such as policy changes, activities, etc

Response:
- ☒ Strongly Agree
- ☐ Agree
- ☐ Neutral
- ☐ Disagree
- ☐ Strongly Disagree

Question 38. Cleanliness: Would you say the institution is clean?

Response:
- ☐ Strongly Agree
- ☐ Agree
- ☒ Neutral
- ☐ Disagree
- ☐ Strongly Disagree

Question 39. Please describe any areas that are not clean.

Response: Food Service!

Question 40. Maintenance: Would you say that repairs on things such as toilets, heating etc. are completed quickly?

Response:
- ☐ Strongly Agree/
- ☐ Agree
- ☐ Neutral
- ☐ Disagree
- ☒ Strongly Disagree

HOFFMAN, MARCELLAS   Inmate #: 40369050

Date:    05/26/2016                                                                                          Location: ATW
Time:    05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 41.  If some things take a long time or never get fixed, what are some examples?

Response:  A good example is that I have been trying for months to have my toilt fixed and still haven't had any work done on it. Its been over 6 months.

Question 42.  Discipline Process: Have you received an incident report at this facility?

Response:

      ☒ Yes
      ☐ No

Question 43.  Fairness of the Disciplinary Process: If you have received an incident report, would you say that the process was fair?

Response:

      ☐ Strongly Agree
      ☐ Agree
      ☐ Neutral
      ☐ Disagree
      ☒ Strongly Disagree
      ☐ N/A

Question 44.  Please explain your rating of the disciplinary process.

Response:  The DHO  do not follow due process all the time and take officers words over the inmate to much! The DHO finds inmates guilty 90 percent of the time.

Question 45.  Time at Work: How much time do you actually spend working on your work assignment? (Scroll Down)

Response:

      ☒ More than 7 hours per day
      ☐ about 7 hours per day
      ☐ about 6 hours per day
      ☐ about 5 hours per day
      ☐ about 4 hours per day
      ☐ about 3 hours per day
      ☐ about 2 hours per day
      ☐ about 1 hour per day or less
      ☐ I am unassigned

Question 46.  If you spend less than 4 hours per day working, what is your job assignment?

Response:  I spend more then 4 hours aday.

HOFFMAN, MARCELLAS 40369050    Inmate #:40369050

Date:  05/26/2016                                                                    Location: ATW
Time:  05:15:58 PM

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 47.  Time to Release: How many months do you have until release? (0-2000)

Response:  2000

Question 48.  Reentry/ Release Preparation: Please rate the following statements about your readiness for release/ reentry.

Response:  NA

Question 49.  There are opportunities and programs for an inmate to improve their skills at this institution

Response:

    ☒ Strongly Agree
    ☐ Agree
    ☐ Neutral
    ☐ Disagree
    ☐ Strongly Disagree

Question 50.  I have acquired skills at this institution that will help me maintain employment upon release

Response:

    ☒ Strongly Agree
    ☐ Agree
    ☐ Neutral
    ☐ Disagree
    ☐ Strongly Disagree

Question 51.  In preparing for release, have you obtained the proper forms of identification required for obtaining employment, drivers license, and benefits (if eligible)?

Response:

    ☐ Strongly Agree
    ☐ Agree
    ☐ Neutral
    ☒ Disagree
    ☐ Strongly Disagree

Date:  05/26/2016                                                    Location: ATW
Time:  05:15:58 PM

# Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 52.  REENTRY is REAL at this institution and has had a positive impact on me.

Response:

☐ Strongly Agree
☒ Agree
☐ Neutral
☐ Disagree
☐ Strongly Disagree

Question 53.  Helping inmates with REENTRY is important to all staff at this institution.

Response:

☒ Strongly Agree
☐ Agree
☐ Neutral
☐ Disagree
☐ Strongly Disagree

Question 54.  Overall, what things could the institution do to help you be more prepared for release and Reentry?

Response:  with better trained staff on reenry it will help inmate become better prepared for release. More on the job training is needed with edcautional classes.

Question 55.  Morale: Overall do you believe the inmate morale at this institution is good?

Response:

☐ Strongly Agree
☐ Agree
☒ Neutral
☐ Disagree
☐ Strongly Disagree

Question 56.  Please describe any concerns you have about the morale at this institution?

Response:  I feel that staff needs better traning on staff misconduct! Some staff provoke inmates to harm them because of their own attidue. Officer Preston really needs counseling on his misconduct!!!!

Question 57.  Open Section: Is there anything you would like to add that hasn't already been covered? If so, please explain.

Response:  Please talk to staff about staff misconduct and about reporting other staff when staff witness misconduct be other staff members. If staff hold each other accountable this would be a much better place for staff and inmates a like. I respectfully request that I have a one on one conversation when you come to this institution to talk to the inmates.Thank you verty much!

HOFFMAN, MARCELLAS  Inmate #:40369050

Date: 05/26/2016
Time: 05:15:58 PM

Location: ATW

## Federal Bureau of Prisons
## TRULINCS Survey
## Personal Inmate Information

Question 58.

Response: NA

End of Survey.

HOFFMAN, MARCELLAS   Inmate #: 40369050

Attachment

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

MARCELLAS HOFFMAN )

      Plaintiff )    Case No.

v. )

D.COYLE,et al., )

      Defendants )

_____ )

DECLARATION OF

MARCUS K.WINSTEAD

REG.NO.12284-007

I Marcus Winstead, hereby declare and state the following:

1.  I am a inmate housed at the Federal Bureau of Prisons
(BOP), USP Atwater, California.I have been at this prison
since 2014.I was employed by the Food Service Department and
held this position from January 7,2016, through October 28th of
2016. As part of my duties,I prepared the SHU trays to be sent
to the inmates in Special Housing Units.

2. I am familiar with the situation between inmate Marcellas
Hoffman Reg.No.40369-050 AKA (Big Moe) and Officer D.Coyle. On
or about January 7,2016 Officer Coyle stated to me and other
inmates while inside the food service department that
"Marcellas Hoffman AKA (Big Moe) had snitched on him by
telling the Food Administrator Mr. Madan that he didn't cut
the Holiday pies in six instead he cut them in eighths and
everyone complained to the Warden about not getting a
sufficient serving of the pie".

3. Because Marcellas Hoffman is from Washington DC a city where I'm from me and other inmates pulled up on him and ask him "Why is Officer Coyle talking about you snitched on him about some pies? You know what's going to happen to you if we find out you are snitching on the C/O's". Officer Coyle also mentioned that Marcellas Hoffman AKA (Big Moe) had wrote a Food Service Proposal and was snitching about how much food was being thrown in the trash.

4. I am also familiar with the situation with Marcellas Hoffman AKA (Big Moe) and Officer Preston where Officer Preston labelled Marcellas Hoffman as a snitch. On or about February 26,2016 me and other inmates had prepared the SHU trays and was pushing the food carts through the OM Staff Dining Hall when me and other inmates heard Officer Preston state to Officer S.DaCarie, "watch yourself in here,inmates snitching on staff who are not paying for meals". Marcellas Hoffman stated to Officer Preston," I know you are not talking about me, I'm not snitching on no one". Officer Preston than stated," Fuck you Hoffman you ain't nobody, I heard about you, you are snitching".

5. One week later on or about March 2,2016 Officer Preston offered a reward to me and other inmates if we would get rid off Marcelas Hoffman AKA (Big Moe) from the Food Service Department. Officer Preston stated," I got a reward for whoever get Hoffman out this kitchen,he is writing them damn proposals and telling on who is not paying for their meals. Everything will go back to normal for all of you if you get rid of Hoffman". As a result of hearing this by Officer Preston, me and other inmates informed Marcellas Hoffman that

Officer Preston was offering to pay a reward to have him removed from the kitchen.

6. I know first had how an Officer could falsely labeling someone as a snitch in order to have them harmed by their own home boys for writing grievances and complaints. Marcellas Hoffman never snitched on these Officers, they were mad at him for writing proposals and speaking his mind.

7.I declare under the penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my information,knowledge and belief.


Executed this24th day of October 2016,in Atwater California.

*Marcus K.Winstead*

Marcus K.Winstead

Reg.No.12284-007