# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLAS HOFFMAN, | Case No. 1:16-cv-01617-LJO-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| PRESTON, | (ECF Nos. 20, 23, 25) |
| Defendant. | |

Plaintiff Marcellas Hoffman is a federal prisoner proceeding pro se and in forma pauperis in this civil action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, (1971), which provides a remedy for violation of civil rights by federal actors.

Currently before the Court is Defendant Preston's ("Defendant") motion for summary judgement on exhaustion of administrative remedies, filed on October 23, 2017. (ECF No. 14.)

## I.

## PROCEDURAL HISTORY

This action is proceeding against Defendant Preston for retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment.

On May 9, 2017, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). (ECF No. 8.) The Court found that Plaintiff's allegation that

Defendant Preston falsely stated that Plaintiff threatened him and that Defendant Preston offered to pay other inmates to harm Plaintiff and have him removed from the kitchen due to his reporting that staff were not paying for meals stated a cognizable claim against Defendant Preston for retaliation in violation of the First Amendment. The Court also found that Plaintiff's allegation that Defendant Preston offered to pay inmates to harm Plaintiff to get him removed from the Food Services department stated a cognizable claim against Defendant Preston for deliberate indifference in violation of the Eighth Amendment. However, the Court found that Plaintiff did not state an Eighth Amendment claim based on being called a snitch.

Following Plaintiff's notification of intent to proceed only on the claims found to be cognizable, (ECF No. 9), on May 23, 2017, the Court dismissed all other claims for the failure to state a cognizable claim for relief, (ECF No. 10).

On August 18, 2017, Defendant filed an application for leave to file a pre-answer motion for summary judgment on exhaustion of administrative remedies. (ECF No. 14.) On August 30, 2017, the Court issued an order granting Defendant leave to file a pre-answer motion for summary judgment on exhaustion of administrative remedies by October 30, 2017. (ECF No. 15.) On September 6, 2017, Plaintiff filed an opposition to Defendant's ex parte application for leave to file pre-answer motion for summary judgment or any other future summary judgment motion. (ECF No. 16.) On September 8, 2017, Defendant filed a reply to that opposition. (ECF No. 17.) On September 12, 2017, the Court issued an order overruling Plaintiff's objection to the order granting leave to Defendant to file a pre-answer motion for summary judgment on exhaustion of administrative remedies. (ECF No. 18.) The Court told Plaintiff that if Defendant filed a motion for summary judgment, Plaintiff could rely on his opposition filed on September 6, 2017. (ECF No. 18.)

On November 3, 2017, Plaintiff filed a notice stating that he wanted to rely upon his opposition to the motion for summary judgment that was filed on September 6, 2017. (ECF No. 23.) On November 9, 2017, Defendant filed a reply. (ECF No. 25.)

Following the Ninth Circuit Court of Appeals' decision in Williams v. King, 875 F.3d 500 (9th Cir. 2017), the undersigned recommended to the District Judge on December 4, 2017,

that this case continue to proceed only on Plaintiff's cognizable claims, and that certain claims be dismissed.  (ECF No. 26.)  On January 11, 2018, the District Judge adopted the findings and recommendations in full.  (ECF No. 27.)

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions."  42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __, 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and a defendant bears the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166.  Otherwise, the defendant must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

/ / /

## B.     Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

## A.     Description of BOP's Administrative Remedy Process

The Federal Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate can seek redress of a complaint in relation to any aspect of his imprisonment.  See 28 C.F.R. §§ 542.10(a).  The inmate must first ordinarily seek to resolve the issue informally with prison staff using a BP-8 form.  28 C.F.R. 542.13(a); Nunez v. Duncan, 591 F.3d 1217, 1219 (9th Cir. 2010).

If the complaint cannot be resolved informally, the inmate must present a formal

Administrative Remedy request at the institution of confinement using a BP-9 form.  28 C.F.R. § 542.14(a); <u>Nunez</u>, 591 F.3d at 1219.  The BP-9 must be submitted within 20 calendar days following the date the grievance occurred, unless the prisoner can provide a valid reason for delay.  28 C.F.R. § 542.14(a), (b); <u>Nunez</u>, 591 F.3d at 1219.

If the BP-9 request is denied by the warden and the prisoner is not satisfied, he must then file an appeal to the Regional Director using a BP-10 form.  28 C.F.R. § 542.15(a); <u>Nunez</u>, 591 F.3d at 1219.  The BP-10 must be submitted within 20 calendar days of the date the warden responded to the BP-9, unless the prisoner provides a valid reason for the delay.  28 C.F.R. § 542.15(a); <u>Nunez</u>, 591 F.3d at 1220.

If the prisoner is dissatisfied with the Regional Director's response, the last step is to submit an appeal to the BOP General Counsel ("OGC") using a BP-11 form.  28 C.F.R. § 542.15(a); <u>Nunez</u>, 591 F.3d at 1219-1220.  The BP-11 must be submitted within 30 calendar days of the date of the Regional Director's response to the BP-10, with the same exception of a valid reason for the delay.  28 C.F.R. § 542.15(a); <u>Nunez</u>, 591 F.3d at 1220.

The records of administrative remedies filed by BOP inmates is maintained on the SENTRY computer system, a national database that includes all administrative grievance filings made by inmates incarcerated in BOP facilities.  (Declaration of Jennifer Vickers ("Vickers Decl.") ¶ 4, ECF No. 20-3; ECF No. 20-4.)  BOP assigns a unique number to each administrative remedy it receives.  (Vickers Decl. ¶ 3.)  This number consists of six digits, followed by a suffix (-F1, -R1, or -A1) which identifies the administrative remedies as a BP-9, BP-10, or BP-11, respectively.  (<u>Id.</u>)

**B.    Summary of Allegations Underlying Plaintiff's Constitutional Claims**

Plaintiff is a federal prisoner and is currently housed at United States Penitentiary ("USP") Lee in Pennington Gap, Virginia.  The incidents alleged in the complaint occurred while Plaintiff was housed at USP Atwater in Atwater, California.

On February 26, 2016, Defendant Preston stated during a conversation to Officer DeCarie in front of other inmates that "inmates are snitching in the staff dining hall and writing officers names down who are not paying for meals."  Plaintiff responded to Defendant Preston that "I am

not snitching on no one, if you are talking about me." Defendant Preston stated, "Fuck you Hoffman, you ain't nobody in here, I heard about you, you are snitching."

Plaintiff alleges that Defendant Preston retaliated against Plaintiff by filing a false incident report claiming that Plaintiff had threatened him by stating, "I'll whoop your ass." Plaintiff was found guilty of insolence towards a staff member. Defendant Preston offered to pay other inmates to harm Plaintiff and to have Plaintiff removed from the Food Services Department due to writing and preparing a food services proposal.

**C.    Statement of Undisputed Facts**

1. At all times relevant to the complaint in this action, Plaintiff was an inmate at the USP Atwater located in Atwater, California.

2. As of August 28, 2017, the date of Plaintiff's statement of undisputed facts and his declaration, Plaintiff was an inmate at USP Lee.

3. The BOP operates an Administrative Remedy Program for inmates to submit complaints concerning their conditions of confinement.

4. The BOP Administrative Remedy Program requires inmates to first attempt to informally resolve their complaint, which is known as "BP-8."

5. After an attempt at informal resolution, the Administrative Remedy Program requires the inmate to present his complaint to the warden of his institution using a form BP-9.

6. If the inmate is dissatisfied with the response at the BP-9 level, the inmate may submit an Administrative Remedy Appeal to the Regional Director using a form BP-10 "within 20 calendar days of the date the Warden signed the response."

7. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the OGC using the form BP-11 "within 30 calendar days of the date the Regional Director signed the response."

8. The BOP's national database of administrative grievances contains six administrative complaints filed by Plaintiff between February 26, 2016, and August 16, 2017, bearing numbers 849332, 857733, 875923, 879988, 880927,

and 881554.

9.     Plaintiff's BP-11 for Administrative Remedy 849332 was rejected as untimely. He never resubmitted the BP-11 with the required staff verification stating that the late filing was not his fault.

10.     Administrative Remedy 849332 related to a dispute Plaintiff had with Cook Supervisor Coyle and did not make any allegations concerning Defendant.

11.     Administrative Remedy 857733 challenged a finding that Plaintiff had been guilty of insolence toward Defendant on the ground that Defendant had provoked Plaintiff.

12.     Administrative Remedy 857733 does not allege that Plaintiff offered to pay other inmates to have Plaintiff hurt or removed from the Food Service Department.

13.     Administrative Remedy 857733 was denied by the Central Office on May 1, 2017.

14.     Plaintiff did not file a BP-9 for Administrative Remedy 875923 and his BP-10 therefore was rejected.

15.     Administrative Remedy 875923 related to the warden's decision to place Plaintiff on telephone and email restrictions and did not make any allegations concerning Defendant.

16.     Plaintiff's BP-10 appeal of administrative remedy 879988 was rejected because he exceeded the page limits.

17.     Administrative Remedy 879988 related to a disciplinary finding that Plaintiff was guilty of possession of a cellular telephone and did not make any allegations concerning Defendant.

18.     Plaintiff's BP-10 appeal of Administrative Remedy 880927 was rejected because it was not sensitive and he had failed to file a BP-9 prior to filing the BP-10.

19.     Administrative Remedy 880927 accused USP Atwater staff of recruiting snitches to operate a jailhouse snitch program and did not make any allegations concerning Defendant.

20. Plaintiff's BP-11 appeal of Administrative Remedy 881554 was rejected because it was not sensitive and Plaintiff had failed to file the grievance at the previous levels.

21. Administrative Remedy 881554 accused USP Atwater staff of recruiting snitches to operate a jailhouse snitch program and did not make any allegations concerning Defendant.

**D.     Analysis of Defendant's Motion**

Defendant argues that Plaintiff did not exhaust his administrative remedies for the constitutional claims against Defendant prior to filing this action.  Pursuant to the PLRA, Plaintiff was required to exhaust his administrative remedies prior to filing suit in this action.  42 U.S.C. § 1997e(a); see Ross, 136 S. Ct. at 1850.

Plaintiff makes two main arguments for how he exhausted his administrative remedies.  The Court first addresses Plaintiff's argument that he exhausted his administrative remedies because he filed a complaint with the BOP TRULINCS Survey, the Regional Director Personal Inmate Information notifying them of the misconduct of Defendant and explaining that Plaintiff also filed administrative remedies.

Plaintiff asserts that he filed a complaint with the BOP TRULINCS Survey notifying them of Defendant's misconduct and explaining that he filed Administrative Remedies.  In a pat of the TRULINCS Survey asking for explanation of the unsafe areas, Plaintiff stated that Defendant keeps trying to have inmates harm Plaintiff because Defendant does not like Plaintiff.  (ECF No. 16 at 57.)[1]     Plaintiff states that he told the Warden, Captain, AW, and the Food Administrator about Defendant's staff misconduct.  (ECF No. 16 at 57.)  Plaintiff stated in response to a question about professionalism and service quality that Defendant is trying to pay inmates to harm Plaintiff and remove Plaintiff from his work area because Defendant does not like Plaintiff.  (ECF No. 16 at 59.)  In response to a question about staff accessibility, Plaintiff stated that he filed Administrative Remedies against Defendant and no one has corrected his

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

misconduct. (ECF No. 16 at 59.) Plaintiff states in another section that someone needs to look into Defendant trying to pay inmates to harm Plaintiff. (ECF No. 16 at 59.) However, even Plaintiff admits that the TRULINCS Survey is not a permissible way to exhaust administrative remedies. Plaintiff states that "[a]dministrative exhaustion is complete when the Central [Office] rules on the inmate's final appeal." (ECF No. 16 at 10.) Therefore, Plaintiff did not exhaust his administrative remedies by filing the TRULINCS Survey.

The Court next addresses Plaintiff's argument that he properly exhausted his administrative remedies concerning Defendant when he filed his BP-8, BP-9, BP-10, and BP-11 through the Discipline Hearing Appeal process and Administrative Remedy Appeal procedures.

Defendant submits the declaration of Jennifer Vickers, Paralegal specialist employed by the BOP, Western Regional Counsel's Office, who declares that from February 26, 2016 (the date Defendant's conduct is alleged to have begun) until August 16, 2017 (the date when prison staff prepared the declaration in support of the summary judgment motion), Plaintiff submitted appeals for six Administrative Remedies. (Vickers Decl. ¶ 5.)

Four of the Administrative Remedies clearly have nothing to do with Plaintiff's claims against Defendant and Plaintiff is not asserting that they satisfy the exhaustion requirements. Administrative Remedy 875923-R1 (BP-10) concerned Plaintiff's telephone restriction (ECF No. 20-7 at 3); Administrative Remedy 879988-R1 (BP-10) concerned Plaintiff's guilty finding for possession of a hazardous tool cellular phone (ECF No. 20-8 at 4); Administrative Remedy 880927-R1 (BP-10) concerned an alleged jail house snitch program that was being operated by BOP staff where inmates made false confessions about targeted staff members and other inmates who are targeted by an SIS department (ECF No. 20-9 at 3); and Administrative Remedy 881554-A1 (BP-11) concerned the same jail house snitch program discussed in Administrative Remedy 880927-R1. The Court next discusses the remaining two Administrative Remedies, 849332 and 857733.

Plaintiff appears to suggest that Administrative Remedy 849332 exhausted his administrative remedies. In his argument that he exhausted his administrative remedies, Plaintiff asserts that the Regional Director and Administrative Remedy Coordinator provided him with a

late response and claimed that BP-9, BP-10, and BP-11 forms he submitted were photocopies. Plaintiff contends that he submitted the original forms when he provided the forms to CSW M. Padgett for mailing back to the Administrative Remedy Coordinator. The only Administrative Remedy from the relevant period that was returned for being untimely and for not including the original forms was Administrative Remedy 849332.

Plaintiff submitted Administrative Remedy 849332-F1 (BP-9) on January 15, 2016. (ECF No. 20-5 at 8-9.) In Administrative Remedy 849332-F1, Plaintiff stated that because he had prepared a food service proposal to try to help food service save money and prevent waste, Cook Supervisor Coyle went around the food service department labelling Plaintiff a snitch to inmates so that inmates would retaliate against Plaintiff. (ECF No. 20-5 at 8.) In his continuation page, Plaintiff stated that Cook Supervisor Coyle had also called him a snitch a week before this incident because Plaintiff had prepared a food service proposal to try to help food service save money and prevent waste. (ECF No. 20-5 at 9.)

On March 30, 2016, Plaintiff submitted Administrative Remedy 849332-R1 (BP-10), where Plaintiff stated that the Warden's response did not properly answer Plaintiff's complaint against Cook Supervisor Coyle for falsely labelling Plaintiff a snitch in order to subject Plaintiff to retaliation by inmates. (ECF No. 20-5 at 5.) Plaintiff expands upon this in his one continuation page, but does not name Defendant and there is no indication that there was any conduct other than that by Cook Supervisor Coyle. (ECF No. 20-5 at 6.)

On September 22, 2016, the Administrative Remedy Coordinator at Central Office told Plaintiff that the central office appeal for 849332 (BP-11) was being rejected and returned. (ECF No. 16 at 51.) On October 21, 2016, CSW Padgett authored a memorandum which states that Plaintiff received administrative remedies on September 8, 2016, which required responses due by August 22, 2016. (ECF No. 16 at 50.) CSW Padgett states that Plaintiff did not have sufficient time to turn in his responses to the OGC because he received the reports late. (ECF No. 16 at 50.)

As the Court said in its screening order, Plaintiff's cognizable retaliation and deliberate indifference claims against Defendant are unrelated to Plaintiff's claim that was dismissed

against Cook Supervisor Coyle. The Court stated that "[w]hile Plaintiff is alleging that both Defendants retaliated against him, these claims appear to arise out of separate and distinct incidents and do not involve the same defendants." (ECF No. 8 at 8.) As Administrative Remedy 849332 only concerns the conduct of Cook Supervisor Coyle, Administrative Remedy 849332 does not exhaust Plaintiff's administrative remedies for his claims against Defendant.

It appears that Plaintiff's main argument for exhaustion is Administrative Remedy 857733. Plaintiff points out that his BP-11 was rejected on May 1, 2017. In Administrative Remedy 857733, Plaintiff appealed his guilty finding in incident report 2820679, wherein he was found guilty of insolence during an incident on February 26, 2016. (ECF No. 20-6 at 5-6.) Plaintiff requested in his continuation page that the insolence charge be expunged because Defendant provoked Plaintiff to use insolence towards him by first using insolence towards Plaintiff. (ECF No. 20-6 at 6.) Administrative Remedy 857733-R1 (BP-10) was received by the Western Regional Office on April 5, 2016. (ECF No. 20-6 at 5.) This BP-10 was denied on April 8, 2016. (ECF No. 20-6 at 4.) On July 5, 2016, the OGC received 857733-A1 (BP-11), which was denied on May 1, 2017. (ECF No. 20-6 at 2-3.)

Plaintiff did not allege in Administrative Remedy 857733 that Defendant offered to pay other inmates to harm Plaintiff and have him removed from the kitchen due to Plaintiff reporting that staff were not paying for meals. In a letter that Plaintiff attached as an exhibit to his opposition, Plaintiff states that Defendant retaliated against Plaintiff and filed a false incident report claiming that Plaintiff threatened him. (ECF No. 16 at 44.) In his reply, Defendant indicates that this letter is related to Administrative Remedy 857733 and a letter by Plaintiff describing the basis for Administrative Remedy 8577333. It appears that Defendant is indicating that this letter was not submitted to BOP.

However, even if Plaintiff properly raised his claims against Defendant in Administrative Remedy 857733, Plaintiff admits that the Central Office rejected the Administrative Remedy on May 1, 2017. (Declaration of Marcellas Hoffman ("Hoffman Decl.") ¶ 5, ECF No. 16 at 32-34). As the complaint was filed in this Court on October 27, 2016, Plaintiff had not received a response from the Central Office until after he filed this complaint.

The Supreme Court has held that the PLRA requires that all available remedies must be exhausted before a complaint challenging conditions of confinement can be entertained regardless of the relief offered through the administrative process. Booth, 532 U.S. at 739, 741; Porter, 534 U.S. at 524. The exhaustion requirement applies to all prisoner suits about inmate life. Porter, 534 U.S. at 532; Woodford v. Ngo, 548 U.S. 81, 85 (2006). The purposes of the PLRA are to allow a prison to address complaints about the programs administered before being subjected to suit, to reduce the litigation to the extent that complaints are satisfactorily resolved, and to improve the litigation that does occur by leading to preparation of a useful record. Jones, 549 U.S. at 219; Ngo, 548 U.S. at 89. Exhaustion prior to commencement of the action is an indispensable requirement. McKinney v. Carey. 311 F.3d 1198, 1199 (9th Cir. 2002). Therefore, Plaintiff must have properly exhausted the claims that are proceeding in this action prior to filing suit in order to comply with the PLRA. Jones, 549 at 224; Ngo, 458 at 93; cf. Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014) (allowing new claims included in amended complaint that were exhausted prior to filing amended complaint).

Thus, Administrative Remedy 857733 does not satisfy the PLRA's requirement for exhaustion prior to filing suit.

It appears that Plaintiff may be attempting to suggest that he filed other Administrative Remedies. However, his general statements and several documents that he attaches as exhibits that do not contain Administrative Remedy numbers are insufficient to raise a genuine issue of material fact.

After Plaintiff's statement in his opposition that his BP-11 was rejected on May 1, 2017, he stated that the rejection did not contain any of his other forms of his Administrative Remedies. (ECF No. 16 at 11.) Plaintiff then stated that he filed other BP-8, BP-9, BP-10, and BP-11 forms, but they were not returned. (Id.) Plaintiff declares that "[t]he Central Office provided Plaintiff with a rejection on May 1, 2017 from his appeal without copies of his (BP-8's) (BP-9) or (BP10)." [sic]. (Hoffman Decl. ¶ 5.) Therefore, it appears that Plaintiff is not suggesting that additional Administrative Remedies were not returned to him. It appears Plaintiff is only suggesting that the May 1, 2017 rejection for Administrative Remedy 857733

from the Central Office did not include the copies of the BP-8, BP-9, and BP-10 for Administrative Remedy 857733.

Plaintiff attaches three Administrative Remedy forms (BP-8, BP-9, and BP-10) that do not have numbers and appear to never have been received by the BOP. (ECF No. 16 at 43, 47, 48.) These forms appear to be for one alleged Administrative Remedy at the first three levels of the grievance process. Plaintiff attaches a BP-8 informal resolution form dated March 16, 2016. (ECF No. 16 at 43.) Plaintiff also attaches a BP-9 dated March 17, 2016. (ECF No. 16 at 47.) Plaintiff states in this BP-9 that Defendant is trying to pay other inmates to harm Plaintiff by calling him a snitch because Plaintiff submitted a food service proposal to try and help prevent food waste in food service. (ECF No. 16 at 47.) The third document is a BP-10 dated March 17, 2017. (ECF No. 16 at 48.) Plaintiff states that Defendant is trying to pay inmates to harm Plaintiff and have him removed from food service for writing a proposal to help prevent waste in the kitchen. (ECF No. 16 at 48.)

However, Plaintiff does not provide any specific details about the filing of this Administrative Remedy. Plaintiff did not claim in his declaration that the declaration of Jennifer Vickers is incorrect or that he filed a grievance which was not included in the BOP grievance database. Plaintiff's declaration states that he exhausted his administrative remedies when he filed his complaint at all three levels and was denied at all three levels. (Hoffman Decl. ¶ 2.) There is no record that these three Administrative Remedy forms were received or denied. Even if they were received and denied by the BOP, there is no record or evidence presented by Plaintiff that he submitted a BP-11 containing the allegations in his March 2017 BP-10. Therefore, he did not complete the grievance process for this Administrative Remedy. In addition, the BP-10 is dated March 17, 2017, which is after the date the complaint was filed in this action. Therefore, that Administrative Remedy could not have exhausted Plaintiff's administrative remedies prior to filing the instant action.

Plaintiff claims that he "need only shows that he substantially complied with prison's grievance policy by 'clearly giving the institution notice of his particular demands and reasonable triggering an attempt to resolve them.' " [sic] (ECF No. 16 at 5.) However, Plaintiff

is incorrect, because in order to properly exhaust, he must comply with "the applicable procedural rules." <u>Jones</u>, 549 U.S. at 218. Thus, to complete the process a federal prisoner must submit administrative remedy requests to each level of review and, if denied, complete the administrative remedy process through submission of a BP-11 to the OGC. (Vickers Decl. ¶ 2.) In this instance, Plaintiff filed this action without exhausting the administrative remedies in violation of the PLRA. <u>See</u> <u>Jones</u>, 549 U.S. at 217-218 ("The Supreme Court has held that "proper exhaustion" is required under the PLRA, and this means a prisoner must "'complete the administrative review process in accordance with the applicable rules.'" (quoting <u>Woodford</u>, 548 U.S. at 88.); <u>see also</u> <u>Albino</u>, 747 F.3d at 1172 (summary judgment should be granted if defendant demonstrates "that there was an available administrative remedy, and that the prisoner did not exhaustion that available remedy.").

Accordingly, Defendant has met his burden of proof in demonstrating that Plaintiff has failed to exhaust the administrative remedies with respect to the claims in this action, and the burden shifts to Plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Albino</u>, 747 F.3d at 1172.

There is no evidence before the Court that something in this case made the existing administrative remedies effectively unavailable to Plaintiff. The Ninth Circuit has held that there are exceptions to the general PLRA exhaustion requirement where the actions of prison staff render a prisoner's administrative remedies "effectively unavailable." <u>See</u> <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010) (a Warden's rejection based upon mistaken reliance on a regulation "rendered [the prisoner's] administrative remedies effectively unavailable"); <u>Sapp v. Kimbrell</u>, 623 F.3d at 823 (prison officials can render "administrative remedies effectively unavailable by improperly screening a prisoner's grievances"); <u>Albino v. Baca</u>, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals process following multiple requests for instruction rendered his administrative remedy effectively unavailable); <u>McBride v. Lopez</u>, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); <u>Brown v. Valoff</u>, 422 F.3d at 940 (plaintiff

not required to proceed to third level where appeal granted at second level and no further relief was available). As Plaintiff has not shown that the administrative remedies were effectively unavailable to him, he is not excused from the PLRA exhaustion requirement.

Where the court concludes that the prisoner has failed to exhaust administrative remedies prior to filing suit, the proper remedy is dismissal without prejudice, even where there has been exhaustion while the suit is pending. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); Lira v. Herrera, 427 F.3d 1164, 1171 (9th Cir. 2005); McKinney, 311 F.3d at 1200-01; see also Maiden v. LA Cty. Sheriff's Dep't Men's Cent. Jail, 334 F. App'x 76, 77 (9th Cir. 2009) (unpublished) (finding district court properly dismissed action because inmate did not complete the grievance process prior to filing suit and failed to demonstrate that he was obstructed from doing so.) Therefore, the Court recommends that this action be dismissed without prejudice for failure to exhaust the administrative remedies.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV.

## RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Defendant's motion for summary judgment be GRANTED; and

2.      The instant action be DISMISSED WITHOUT PREJUDICE for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 8, 2018**

UNITED STATES MAGISTRATE JUDGE