# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLAS HOFFMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>TIMOTHY PRESTON,<br><br>    Defendant. | Case No. 1:16-cv-01617-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S FIRST AMENDMENT CLAIM BE DISMISSED FOR FAILURE TO STATE A COGNIZABLE CLAIM AND PLAINTIFF'S EIGHTH AMENDMENT CLAIMS PROCEED AS COGNIZABLE<br><br>(ECF No. 42)<br><br>**THIRTY DAY DEADLINE** |

## I.

## INTRODUCTION AND BACKGROUND

Plaintiff Marcellas Hoffman is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, (1971). This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Currently before the Court is Plaintiff's first amended complaint. (ECF No. 42.)

**A.    Procedural History**

Plaintiff filed this action on October 27, 2016. (ECF No. 1.) On May 9, 2017, the Court screened Plaintiff's complaint and ordered that Plaintiff could either file an amended complaint curing the deficiencies identified or could notify the Court that Plaintiff does not wish to file an amended complaint and instead wishes to proceed only against Defendant Preston for retaliation

1

in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment. (ECF No. 8.) On May 22, 2017, Plaintiff filed a notice with the Court stating that he would only proceed against Defendant Preston ("Defendant" or "Preston") for his claims of retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment, and on May 23, 2017, the undersigned issued an order directing that the action shall proceed on these claims only. (ECF Nos. 9, 10.)

On November 9, 2017, the Ninth Circuit ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a magistrate judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). In light of the Ninth Circuit's decision, on December 4, 2017, the undersigned issued a findings and recommendations recognizing that the Court did not previously have jurisdiction to dismiss the claims in its May 23, 2017 order (ECF No. 10), and recommended to the District Judge that the case continue to proceed only on Plaintiff's claims of retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment. (ECF No. 26.) On January 11, 2018, the district judge adopted the findings and recommendations dismissing all claims except for the First Amendment and Eighth Amendment claims against Defendant Preston. (ECF No. 27.)

Prior to the re-screening, on October 23, 2017, Defendant Preston had filed a pre-answer motion for summary judgment for the failure to exhaust available administrative remedies. (ECF No. 20.) On September 26, 2018, the district judge adopted in part and declined to adopt in part findings and recommendations to grant the motion for summary judgment, based on disputed facts. (ECF No. 33.) The matter was referred to the undersigned to conduct an evidentiary hearing on whether administrative remedies were effectively unavailable when Plaintiff sought to grieve certain allegations. (Id. at 7.)

On October 10, 2018, Defendant filed a motion requesting a briefing schedule to allow the filing of a motion to dismiss prior to the Court conducting an evidentiary hearing. (ECF No. 34.) On November 6, 2018, the Court granted Defendant's request, and set a briefing schedule for a motion to dismiss. (ECF No. 36.) On November 8, 2018, Defendant filed a motion to

dismiss. (ECF No. 37.) On November 26, 2018, Plaintiff filed an opposition to the motion to dismiss. (ECF No. 38.) Defendant filed a reply to Plaintiff's opposition on December 4, 2018. (ECF No. 39.) On the caption page of his opposition to the motion to dismiss, Plaintiff gave notice that he was filing an amended complaint pursuant to Rule 15(a) and Rule 15(c) of the Federal Rules of Civil Procedure, and attached such complaint to his opposition. (ECF No. 38 at 1, 25.)

On March 15, 2019, the undersigned issued a findings and recommendations recommending that Plaintiff's amended complaint that was attached to his opposition to Defendant's motion to dismiss be accepted rendering Defendant's motion to dismiss moot. (ECF No. 40.) On April 11, 2019, the District Judge issued an order adopting the findings and recommendations in full. (ECF No. 41.) On April 11, 2019, the Court docketed Plaintiff's first amended complaint which is currently before the Court for screening. (ECF No. 42.)

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is a federal prisoner and is currently housed at United States Penitentiary Lee in Pennington Gap, Virginia. The incidents alleged in the complaint occurred while Plaintiff was housed at the United States Penitentiary Atwater in Merced County, California. (First Amended Compl. ("Compl.") 1, ECF No. 42.)

Plaintiff states he was given prior approval by the warden, the food administrator, and food service assistant, to prepare and write a food service proposal to help prevent waste in the food service department, and received a $100.00 bonus for writing the proposal. On February 26, 2016, Defendant Preston, while speaking with an Officer DeCarie, stated, in front of other inmates, that "inmates are snitching in the staff dining hall and writing officers names down who are not paying for meals." Plaintiff responded to Defendant Preston by stating: "I am not snitching on no one, if you are talking about me." Defendant Preston responded: "Fuck you Hoffman, you ain't nobody in here. I heard about you, you are snitching." Plaintiff responded: "fuck you, you ain't nobody, and I am somebody to myself."

Defendant then told Plaintiff that he would be going to the holding tank, and escorted Plaintiff to the holding tank, pushed him in, and locked the door. (Id.) Defendant then came to the window and told Plaintiff "yeah you threatened me." Plaintiff responded stating "I did not threatened you." An "LT" walked by the holding tank and stated to Defendant: "Why you have

4

inmate Hoffman in the holding tank, that is our Cook." Defendant looked at Plaintiff then back at the LT and stated: "He threatened me." Plaintiff was then escorted to the Special Housing Unit and placed in a cell.

Defendant Preston retaliated against Plaintiff by filing a false incident report claiming that Plaintiff had threatened him by stating: "I'll whoop your ass." This report was later proven to be false. Defendant Preston offered to pay other inmates to harm Plaintiff and have Plaintiff removed from the kitchen for reporting that staff were not paying for meals. Plaintiff was assaulted by another inmate and had a fight as a result of being labelled a snitch. On May 16, 2016, Plaintiff was assaulted in his cell by inmate Emmanuel Ward and was punched in the face, his head hit the locker, and he was kicked in the stomach as a result of Defendant labelling Plaintiff as a snitch.

Prior to being placed in the special housing unit on February 26, 2016, Defendant had been trying to have Plaintiff removed from the kitchen. After being released from the Special Housing Unit Defendant offered to pay other inmates to harm Plaintiff and have Plaintiff removed from the kitchen., and stated in front of other staff members that he wanted Plaintiff removed from the kitchen. On May 16, 2016, Defendant state to the cook supervisor Islam: "I'm not letting none of your guys out until they get Hoff out the kitchen." Islam then came and informed Plaintiff about what Defendant had stated to him. The same day, Defendant stated to inmate Tracy Adams: "Hoffman is a snitch tell him to find another job, and everything will go back to normal for you'll meaning allowing inmates to remove food items from the kitchen without permission) I want him out of here."

Plaintiff states Defendant offered to pay other inmates to harm Plaintiff. Specifically, Defendant offered to pay inmates Marcus Winstead, Hassan Hill, Edgar Jones, Shanon Williams, among other unnamed inmates, to harm Plaintiff and have him removed from the kitchen. Plaintiff states that even though he has been transferred from the prison at Atwater, he still has to defend against being falsely labelled a snitch and has received some threats from both inmates and staff, and if they find out I was snitching on staff he will be assaulted.

Plaintiff brings a claim for violation of the First Amendment's right to freedom of speech

5

when Defendant retaliated against him for writing the food service proposal and making claims that Plaintiff was writing staff names down who did not pay for meals. Plaintiff alleges Defendant was trying to chill Plaintiff's protected speech rights by offering to pay inmates to harm Plaintiff, and that he got into a fight as a direct result of being labelled a snitch. Plaintiff also claims Defendant violated his First Amendment rights by writing the false incident report causing Plaintiff to be placed in the Special Housing Unit without cause.

Plaintiff brings a claim under the Eighth Amendment because Defendant violated his right to be free from intentional harm caused by Defendant, and Defendant was deliberately indifferent when he offered to pay other inmates to harm Plaintiff for his writings and for claiming Plaintiff was reporting staff for not paying for their meals. Plaintiff claims Defendant was deliberately indifferent to the potential harm that Plaintiff would receive by offering other inmates a reward to harm Plaintiff and have him removed from the kitchen, especially given the fact that Atwater is a very high-security institution and was aware of the potential harm. Plaintiff highlights that Defendant specifically knew that inmates at Atwater were constantly being assaulted in the prison yard for being a snitch or being labeled as one, and in fact, Plaintiff has witnessed Defendant himself activate his body alarm and ordered other inmates to separate during attacks on inmates resulting from people being labeled a snitch or being a snitch. Plaintiff was assaulted by inmate Emmanuel Ward as a direct result of Defendant labeling him a snitch.

By way of relief, Plaintiff requests a declaration that Defendant has violated Plaintiff's rights under the Constitution, an order that Defendant pay compensatory and punitive damages in the amount of $100,000.00, along with attorney fees, costs, and other proper relief.

**IV.**

**DISCUSSION**

**A.  The First Amendment Claim Under Bivens**

The Supreme Court has recently emphasized that "the Court has made clear that expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity," which is "in accord with the Court's observation that it has 'consistently refused to extend <u>Bivens</u> to any new context or new category of defendants.'" <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017) (first quoting

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009); then quoting Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001)). Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed. 137 S. Ct. at 1859-60. A district court must first consider whether the claim presents a new context from previously established Bivens remedies, and if so, it must then apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens in the absence of affirmative action by Congress. Id. at 1857-60.

"If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new." Id. at 1859. The Ziglar Court provided several non-exhaustive examples of differences meaningful enough to make a given context a new one: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Id. at 1859-60.

To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. See Ziglar, 137 S. Ct. at 1860 (Supreme Court has approved three Bivens claims in the past); Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause). The Supreme Court has never implied a Bivens action under any clause of the First Amendment. See Reichle v. Howards, 566 U.S. 658 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Bush v. Lucas, 462 U.S. 367 (1983) (declining to extend Bivens to a First Amendment claim); but see Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("we have declined to extend Bivens to a claim sounding in the First Amendment . . . Petitioners do not press this argument, however, so we assume, without deciding, that respondent's First Amendment claim is actionable under Bivens.").

1   While the Ninth Circuit previously has authorized a Bivens claim based on the First Amendment, Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986), the Ziglar opinion states that the proper test involves a consideration of Bivens cases decided by the Supreme Court, not by the Courts of Appeals. Ziglar, 137 S. Ct. at 1859 ("If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new."). Ninth Circuit decisions are therefore not controlling, and additionally, the Ninth Circuit has thereafter declined to extend Bivens to a distinguishable First Amendment Claim. See Vega v. United States, 881 F.3d 1146, 1153 (9th Cir. 2018). The Vega court noted that in Gibson, the Ninth Circuit held "because plaintiffs have alleged that FBI agents acted with the impermissible motive of curbing [the plaintiff's] protected speech, they have asserted a claim properly cognizable through a Bivens-type action directly under the First Amendment," 781 F.2d 1334, 1342 (9th Cir. 1986), however the Ninth Circuit in Vega then held "because neither the Supreme Court nor we have expanded Bivens in the context of a prisoner's First Amendment access to court or Fifth Amendment procedural due process claims arising out of a prison disciplinary process, the circumstances of Vega's case against private defendants plainly present a 'new context' under Abbasi." Vega, 881 F.3d at 1153. Therefore, even if Ziglar did not require the analysis to focus on previous Bivens cases decided by the Supreme Court, like in Vega, the facts here would likely distinguish the matter in a meaningful way from the facts in Gibson.[1] However the Court does not find such an analysis necessary given the rule stated in Ziglar that the test is dependent on Bivens cases decided by the Supreme Court. 137 S. Ct. at 1859.

For these reasons, the Court finds that because there is no governing U.S. Supreme Court case holding that Bivens extends to First Amendment retaliation claims, this case is different in a meaningful way from previous Bivens cases decided by the Supreme Court, and therefore the Court must evaluate whether special factors counsel hesitation in extending a Bivens claim in

---

[1] As noted above, the Ziglar v. Abbasi Court provided several non-exhaustive examples of differences meaningful enough to make a given context a new one: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." 137 S. Ct. at 1859-60.

this context without affirmative action by Congress. 137 S. Ct. at 1857-60.

1. Special Factors Analysis as to the First Amendment Claim

In Ziglar, the Supreme Court stated that most often, Congress, not the courts, should decide whether to provide a damages remedy "[w]hen an issue involves a host of considerations that must be weighed and appraised." 137 S. Ct. at 1857 (quoting Bush v. Lucas, 462 U.S. 367, 380 (1983) (internal quotations omitted)). For this reason, "a Bivens remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." Id. (quoting Carlson, 446 U.S. at 18). The special factors "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58.

### a. The Presence of Alternative Remedies

As discussed in Ziglar, "the existence of alternative remedies usually precludes a court from authorizing a Bivens action." 137 S. Ct. at 1865. It is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, which Plaintiff utilized, along with the availability of a writ of habeas corpus if any retaliation extends his confinement, injunctive relief, and if the retaliation led to physical injuries, the ability to bring a claim under the Federal Torts Claims Act. The fact that some of these alternative remedies may not afford monetary damages, or have different procedures, such as lack of a right to a jury trial, does not change the analysis. See Abbasi, 137 S. Ct. at 1865 (alternative remedies may include a "writ of habeas corpus . . . an injunction requiring the warden to bring his prison into compliance . . . or some other form of equitable relief"); W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1123 (9th Cir. 2009) (noting that while the APA does not provide for monetary damages or right to a jury trial, such remedial schemes may be adequate if the absence of such features was not inadvaterent on part of Congress); Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir. 2003) (nothing Bivens claims are precluded where Congress provided an alternative mechanism for relief that it considers adequate to remedy constitutional violations, and the failure to provide monetary damages or other relief was not inadvertent). The Court also notes that in this district and across the country, courts seem to be

in agreement that, post-Abbasi, prisoners have no right to bring a Bivens action for violation of the First Amendment, Free v. Peikar, No. 117CV00159AWIMJSPC, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018); Leibelson v. Collins, No. CV 5:15-CV-12863, 2017 WL 6614102, at *10 (S.D.W. Va. Dec. 27, 2017), and have specifically noted that the existence of alternative remedial schemes in place for First Amendment claims by prisoners counsels against extending, Buenrostro v. Fajardo, No. 114CV00075DADBAMPC, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017); Muhhamad v. Gehrke, 2018 WL 1334936, *4 (S.D. Ind. Mar. 15, 2018); Andrews v. Miner, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017).

Therefore, because Plaintiff has alternative remedies available to him, the Court finds this special factor directs the Court to not find an implied Bivens action. While this factor can be determinative, the Court will now address the impact of other special factors. See Ziglar, 137 S. Ct. at 1865 ("the existence of alternative remedies usually precludes a court from authorizing a Bivens action.").

### b. Congressional Action or Inaction

The Supreme Court found that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation," and specifically noted that:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. See *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Ziglar, 137 S. Ct. at 1865. The Supreme Court also noted that because Congress's failure to provide a damages remedy "might be more than mere oversight," congressional silence on the availability of such a remedy may be "relevant" or "telling." Id. at 1849, 1862. The Court finds that the PLRA demonstrates legislative action within the context of prisoner complaint litigation, and suggests Congressional intent to limit potential damages remedies in this area and therefore this special factor counsels hesitation in extending Bivens. 137 S. Ct. at 1865.

1 **c.     The Impact on Government Operations**

Finally, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide . . . includ[ing] the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." Ziglar, 137 S. Ct. at 1858.

The Supreme Court has repeatedly acknowledged the significant impact of Bivens remedies on government operations. See Bush v. Lucas, 462 U.S. 367, 389 (1983) ("In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service."); Anderson v. Creighton, 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."); Schweiker v. Chilicky, 487 U.S. 412, 425 (1988) ("The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established."); Wilkie v. Robbins, 551 U.S. 537, 561 (2007) ("[A]t this high level of generality, a Bivens action to redress retaliation against those who resist Government impositions on their property rights would invite claims in every sphere of legitimate governmental action affecting property interests.").

The Northern District of Alabama addressed these concerns when it declined to extend a Bivens remedy to a prisoner for a First Amendment retaliation claim:

> If this Court allows an implied *Bivens* remedy for First Amendment retaliation by use of excessive force, it could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any use of force by the officers resulted from retaliatory animus. Any increase in suits by inmates necessarily involves increased litigation costs to the Government and burdens on the individual employees who must defend such claims. First Amendment retaliation claims, requiring inquiry into a defendant's subjective state of mind, often would present genuine issues of material fact not easily resolved on summary judgment. This, in turn, would necessitate trials and further increase litigation costs.

Andrews v. Miner, 301 F. Supp. 3d 1128, 1135 (N.D. Ala. 2017).

Given the complexities of prison administration and interaction between the executive and legislative branches in that area, the wide-ranging impact on government operations that can develop from court-created remedies counsel against the Court creating a Bivens remedy here. For these reasons, the Court finds the factor of the potential impact on government operations clearly weighs in favor of deferring to Congress.

2. The Special Factors Counsel against Extending Bivens to Plaintiff's First Amendment Claim

For all of the foregoing reasons, the Court finds that special factors counsel hesitation in this context, and declines to find an implied Bivens cause of action for First Amendment retaliation. 137 S. Ct. at 1857 ("a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.") (quoting Carlson, 446 U.S. at 18). This deficiency is not subject to cure, and the Court finds that it would be futile to provide Plaintiff with an opportunity to amend his First Amendment retaliation claim. Accordingly, the Court recommends that the First Amendment retaliation claim be dismissed without leave to amend. The Court now turns to Plaintiff's Eighth Amendment claim.

**B. The Eighth Amendment Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty "to protect prisoners from violence at the hands of other

12

prisoners," Farmer, 511 U.S. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)), and those officials have an obligation to "take reasonable measures to guarantee the safety of the inmates, Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

To prove a violation of the Eighth Amendment, the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer, 511 U.S. at 844). Officials may be aware of the risk because it is obvious. Thomas, 611 F.3d at 1152.

At the pleading stage, Plaintiff's allegation that Defendant Preston offered to pay inmates to harm him is sufficient to state a cognizable claim for violation of the Eighth Amendment. Additionally, Plaintiff's allegation that Defendant Preston labelled Plaintiff a snitch in front of other inmates is sufficient to state a cognizable claim for violation of the Eighth Amendment. See, e.g., Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (in 1983 action, holding allegations that officials labeled inmate a snitch with the intent of having him killed by other inmates may state a claim for violation of right to be protected from violence while in custody); Burns v. Martuscello, 890 F.3d 77, 91 (2d Cir. 2018) (noting that it is "well understood that inmates known to be snitches are widely reviled within the correctional system," and thus "a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners.") (citing Irving v. Dormire, 519 F.3d 441, 450–51 (8th Cir. 2008); Benefield v. McDowall, 241 F.3d 1267, 1270–71 (10th Cir. 2001); Watson v. McGinnis, 964 F.Supp. 127, 131 (S.D.N.Y. 1997)); Jordan v. Hooks, No. CV 6:13-CV-2247-BHH, 2015 WL 5785504, at *4 (D.S.C. Sept. 29, 2015) (in 1983 action, holding that "[b]ecause the plaintiff has presented direct evidence that the defendant called him a snitch under circumstances suggesting that the defendant intended to communicate the label to other prisoners, the Court finds that he has

sufficiently satisfied the objective and subjective components of the Farmer standard.").

## III.
## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's First Amendment retaliation claim be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a cognizable claim under Bivens; and

2. This action proceed on Plaintiff's claims against Defendant Preston for violation of the Eighth Amendment.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of 28 U.S.C. §636 (b)(1)(B). Within **thirty (30) days** after being served with these finding and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 24, 2019**

_____
UNITED STATES MAGISTRATE JUDGE