# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELLAS HOFFMAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TIMOTHY PRESTON,<br><br>　　　　　Defendant. | Case No. 1:16-cv-01617-LJO-SAB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>(ECF No. 47)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Marcellas Hoffman is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Currently before the Court is Defendant Timothy Preston's motion to dismiss, filed on July 18, 2019. (ECF No. 47.)

## I.

## INTRODUCTION

Plaintiff initiated this action on October 27, 2016. (ECF No. 1.) On May 9, 2017, the Court screened Plaintiff's complaint and found that Plaintiff alleged cognizable claims against Defendant Preston for retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment, but failed to state any other cognizable claims against any other defendants. (ECF No. 8.) Plaintiff was ordered to either file a first amended complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable by the

1

Court. (Id. at 8-10.) On May 22, 2017, Plaintiff notified the Court in writing of his willingness to proceed only on the cognizable claims identified by the Court. (ECF No. 9.) Thereafter, on May 23, 2017, the Court issued an order finding service of the complaint appropriate for Defendant and dismissing all other claims and defendants from the action for failure to state a cognizable claim for relief. (ECF No. 10.)

After receiving leave from the Court, Defendant filed a pre-answer motion for summary judgment for failure to exhaust administrative remedies on October 23, 2017. (ECF Nos. 15, 20.)

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that "all plaintiffs and defendants named in the complaint – irrespective of service of process" – must consent "before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Williams v. King, 875 F.3d 500, 501, 504-05 (9th Cir. 2017). On December 1, 2017, in light of the Williams decision, the Court issued findings and recommendations recognizing that the Court did not have jurisdiction to dismiss the non-cognizable claims and all defendants other than Defendant Preston in its May 23, 2017 order and recommending to the District Judge that this case proceed only on the cognizable claims against Defendant Preston and that all other claims and defendants be dismissed. (ECF No. 26.) On January 10, 2018, the District Judge adopted the December 1, 2017 findings and recommendations in full. (ECF No. 27.)

On August 8, 2018, the Court issued findings and recommendations recommending that Defendant's motion for summary judgment for failure to exhaust administrative remedies be granted and that the instant action be dismissed without prejudice. (ECF No. 29.) However, on September 26, 2018, the District Judge issued an order adopting the August 8, 2018 findings and recommendations in part, denying Defendant's motion for summary judgment for failure to exhaust administrative remedies, and referring the case back for an evidentiary hearing on the disputed issues of fact regarding whether administrative remedies were effectively unavailable when Plaintiff sought to grieve certain allegations raised against Defendant. (ECF No. 33.)

On November 5, 2018, the Court granted Defendant's motion for leave to file a motion to dismiss prior to the Court conducting the exhaustion-related evidentiary hearing. (ECF Nos. 34,

36.) On November 8, 2018, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) On November 26, 2018, Plaintiff filed his opposition to Defendant's motion to dismiss. (ECF No. 38.) As part of his opposition, Plaintiff requested leave to file the proposed first amended complaint that he had included as Attachment 1 pursuant to Federal Rule of Civil Procedure 15(a) and (c). (ECF No. 38, at 1, 22, 24-32.)

On March 15, 2019, the Court issued findings and recommendations recommending that Plaintiff's request for leave to file a first amended complaint be granted and that Defendant's motion to dismiss be denied as moot. (ECF No. 40.) The District Court adopted the March 15, 2019 findings and recommendations in full on April 9, 2019. (ECF No. 41.)

Also, on April 11, 2019, the Court docketed Plaintiff's first amended complaint. (ECF No. 42.) On April 24, 2019, the Court screened Plaintiff's first amended complaint and issued findings and recommendations recommending that Plaintiff's First Amendment retaliation claim be dismissed without leave to amend for failure to state a cognizable claim under Bivens, and that this action proceed on Plaintiff's claim against Defendant for violation of the Eighth Amendment. (ECF No. 43.) On June 12, 2019, the District Judge adopted the April 24, 2019 findings and recommendations in full. (ECF No. 44.)

On June 14, 2019, the Court granted Defendant's motion for an extension of time to file a responsive pleading and ordered Defendant to file a motion to dismiss, or another responsive pleading, no later than July 19, 2019. (ECF No. 46.)

On July 18, 2019, as noted above, Defendant filed a motion to dismiss this action in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 47.) Plaintiff filed an opposition to Defendant's motion to dismiss on July 29, 2019, and Defendant filed a reply on August 5, 2019. (ECF Nos. 48, 50.) Accordingly, Defendant's motion to dismiss is deemed submitted for decision without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of

3

sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

**III.**

**DISCUSSION**

**A.     Summary of the Plaintiff's First Amended Complaint**

Plaintiff is a federal prisoner currently housed at U.S. Penitentiary Lee in Pennington Gap, Virginia. The incident alleged in the first amended complaint occurred while Plaintiff was housed at U.S. Penitentiary Atwater in Atwater, California.

Plaintiff names Preston as the sole defendant.

Plaintiff states he was given prior approval by the warden, the food administrator, and food service assistant, to prepare and write a food service proposal to help prevent waste in the food service department, and received a $100.00 bonus for writing the proposal. On February 26, 2016, Defendant Preston, while speaking with Officer DeCarie, stated, in front of other inmates, that "inmates are snitching in the staff dining hall and writing officers names down who are not

4

paying for meals." Plaintiff responded to Defendant Preston by stating: "I am not snitching on no one, if you are talking about me." Defendant Preston responded: "Fuck you Hoffman, you ain't nobody in here. I heard about you, you are snitching." Plaintiff responded: "fuck you, you ain't nobody, and I am somebody to myself." (ECF 42, at 2.)

Defendant then escorted Plaintiff to the holding tank, pushed him in, and locked the door. (Id.) Defendant came to the holding tank window and stated to Plaintiff: "yeah you threatened me." (Id.) Plaintiff responded: "I did not threatened (*sic*) you." (Id.) An "LT" walked by the holding tank and stated to Defendant: "Why you have inmate Hoffman in the holding tank, that is our Cook." (Id. at 3.) Defendant looked at Plaintiff then back at the LT and stated: "He threatened me." (Id.) Plaintiff was then escorted to the Special Housing Unit and placed in a cell.

As a result of Defendant Preston labelling Plaintiff as a snitch in front of other inmates and staff, Plaintiff was assaulted by another inmate and had a fight. Specifically, Plaintiff was punched in the face, kicked in the stomach, and his head hit his locker when he was assaulted in his cell by inmate Emmanuel Ward. Additionally, Plaintiff asserts that Defendant Preston offered to pay inmates Marcus Winstead, Hassan Hill, Edgar Jones, Shanon Williams, among other unnamed inmates, to harm Plaintiff and have him removed from the kitchen for reporting that staff were not paying for meals.

Prior to being placed in the special housing unit on February 26, 2016, Defendant had been trying to have Plaintiff removed from the kitchen. After Plaintiff was released from the Special Housing Unit, Defendant Preston offered to pay other inmates to harm Plaintiff and have Plaintiff removed from the kitchen. Defendant Preston also stated in front of other staff members that he wanted Plaintiff removed from the kitchen. On May 16, 2016, Defendant stated to Cook Supervisor Islam: "I'm not letting none of your guys out until they get Hoff out the kitchen." (Id. at 4.) Cook Supervisory Islam informed Plaintiff about what Defendant Preston had stated to him. On the same day, Defendant told inmate Tracy Adams: "Hoffman is a snitch tell him to find another job, and everything will go back to normal for you'll meaning allowing inmates to remove food items from the kitchen without permission) I want him out of here." (Id.)

Plaintiff states that, even though he has been transferred from U.S Penitentiary Atwater,

5

he still has to defend against being falsely labelled a snitch by Defendant Preston. Plaintiff states that he has received some threats from both inmates and staff, and if "they" find out that Plaintiff was snitching on staff, Plaintiff will be assaulted. (Id.)

By way of relief, Plaintiff requests a declaration that Defendant Preston has violated Plaintiff's rights under the U.S. Constitution, an order that Defendant pay compensatory and punitive damages in the amount of $100,000.00, an order for reasonable attorney fees and costs, and other relief as the Court deems necessary.

**B.    The Viability of Plaintiff's Eighth Amendment Bivens Claim After Ziglar v. Abbasi**

Bivens established that the victims of a constitutional violation by a federal agent 'have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). The Supreme Court has implied a damages remedy under the U.S. Constitution in only three contexts: (1) Fourth Amendment unreasonable search and seizure in Bivens, 403 U.S. at 396-97; (2) Fifth Amendment gender discrimination in Davis v. Passman, 442 U.S. 228, 248-49 (1979); and (3) Eighth Amendment deliberate indifference to serious medical needs in Carlson, 446 U.S. at 19. "These three cases – Bivens, Davis, and Carlson – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar v. Abassi, 137 S. Ct. 1843, 1855 (2017).

Recently, in Ziglar, the U.S. Supreme Court made it "clear that expanding the Bivens remedy is now a 'disfavored' judicial activity," which is "in accord with the Court's observation that it has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Ziglar, 137 S. Ct. at 1857 (internal citations omitted). In Ziglar, the Supreme Court set forth a two-part test for courts to use in order to determine whether a Bivens claim may proceed. Ziglar, 137 S. Ct. at 1859-60. First, the court must determine whether the case presents a new Bivens context. "If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new." Id. at 1859. The Ziglar Court provided several non-exhaustive examples of differences meaningful enough to make a given context a

6

new one: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Id. at 1859-60.

Second, if a case presents a new context for a Bivens action, the court must then determine whether there are any "special factors counselling hesitation in the absence of affirmative action by Congress." Id. at 1857 (citation omitted). The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" Id. at 1857-58. "[Ziglar's] special factors include: the rank of the officer involved; whether Bivens is being used as a vehicle to alter an entity's policy; the burden on the government if such claims are recognized; whether litigation will reveal sensitive information; whether Congress has indicated that it does not wish to provide a remedy; whether there are alternate avenues of relief available; and whether there is adequate deterrence absent a damages remedy, among other factors." Lanuza v. Love, 899 F.3d 1019, 1028 (9th Cir. 2017). Ziglar specifically noted that, "if there is an affirmative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Ziglar, 137 S. Ct. at 1858. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." Id.

1. Plaintiff's Eighth Amendment Claim Presents a New Bivens Context

In his motion to dismiss, Defendant Preston argues that it is clear that Plaintiff's Eighth Amendment claim arises in a new context not previously recognized in one of the Supreme Court's three Bivens cases. (ECF No. 47-1, at 5-6.) In his opposition, Plaintiff appears to be contending that his Eighth Amendment claim does not present a new Bivens context because the

Supreme Court approved an Eighth Amendment <u>Bivens</u> claim for failure to protect inmates from a substantial risk of serious harm to their health and/or safety in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). (ECF No. 48, at 4.)

Plaintiff asserts that, since Defendant Preston offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, Defendant Preston was deliberately indifferent to a substantial risk of serious harm to Plaintiff's health and safety in violation of Plaintiff's Eighth Amendment rights. Initially, Plaintiff's apparent argument that the Supreme Court implied a <u>Bivens</u> damages remedy for an Eighth Amendment failure to protect claim in <u>Farmer</u> is unavailing because the Supreme Court in <u>Ziglar</u> clearly stated that "<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> … represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar</u>, 137 S. Ct. at 1855 (italics added). Therefore, the Supreme Court has approved of only one <u>Bivens</u> damages remedy under the Eighth Amendment – specifically for failure to provide medical care. <u>Carlson</u>, 446 U.S. at 16 n.1, 18-23. In this case, Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth Amendment claim in <u>Carlson</u> because Plaintiff's claim arises out of allegations that a correctional officer offered to pay inmates to harm Plaintiff and labeled Plaintiff a snitch in front of other inmates, not failure to provide medical care. Therefore, Plaintiff's Eighth Amendment failure to protect claim accordingly arises in a new <u>Bivens</u> context. Hence, the Court must evaluate whether special factors counsel against extending the <u>Bivens</u> damages remedy to Plaintiff's Eighth Amendment failure to protect claim.

        2.      <u>Special Factors Counsel Against Extending the Bivens Remedy to Plaintiff's Eighth Amendment Claim</u>

Here, Defendant Preston contends that special factors counsel against extending the <u>Bivens</u> damages remedy to Plaintiff's Eighth Amendment claim. First, Defendant argues that Congress has taken legislative action that suggests that it does not want to extend the <u>Bivens</u> damages remedy. Second, Defendant contends that Plaintiff's Eighth Amendment claim cannot be litigated without judicial interference in a prison disciplinary matter. Third, Defendant argues that Plaintiff has several available alternative remedies. Finally, Defendant contends that <u>Bivens</u>

8

should not be extended here because extension of the remedy will have a significant impact on government operations and separation of powers concerns counsel against such extension. (ECF No. 47-1, at 6-10.)

Applying the principles set forth in Ziglar to this case reveals that there are several "special factors" that counsel against extending the Bivens damages remedy to Plaintiff's Eighth Amendment failure to protect claim.

### a. Alternate Remedies Are Available

Initially, it is clear that Plaintiff had, or has, alternative remedies available to him. First, the Federal Bureau of Prisons administrative grievance process, which Plaintiff utilized, affords prisoners a process for challenging the conditions of their confinement. See Gonzalez v. Hasty, 269 F. Supp. 3d 45, 60 (E.D.N.Y. 2017) (holding, post-Ziglar, that the administrative complaints that plaintiff-inmate filed with the BOP, though unsuccessful, were one of two "alternative remedies available" to Plaintiff "to challenge his conditions of confinement," and, while non-judicial and administrative in nature, they constituted, along with the availability of habeas relief, "special factors counseling against the creation of a new claim here"). Second, a prisoner who believes his constitutional rights are being violated may initiate an action for declaratory and injunctive relief. See 18 U.S.C. § 3626 (providing remedies in any civil action with respect to prison conditions). Third, prisoners can bring a civil action for damages against the U.S. Government pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b)(1), 2679(b). The fact that some of these alternative remedies may not afford monetary damages, or have different procedures, such as lack of a right to a jury trial, does not change the analysis. See Ziglar, 137 S. Ct. at 1865 (alternative remedies may include a "writ of habeas corpus . . . an injunction requiring the warden to bring his prison into compliance . . . or some other form of equitable relief"); W. Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1123 (9th Cir. 2009) (noting that while the APA does not provide for monetary damages or right to a jury trial, such remedial schemes may be adequate if the absence of such features was not inadvertent on part of Congress); Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir. 2003) (noting Bivens claims are precluded where Congress provided an alternative mechanism for relief that it considers adequate to remedy constitutional

violations, and the failure to provide monetary damages or other relief was not inadvertent). "[W]hen alternative methods of relief are available, a <u>Bivens</u> remedy usually is not." <u>Ziglar</u>, 137 S. Ct. at 1863. Therefore, since Plaintiff has or had alternative remedies available to him, this special factor counsels against extending a <u>Bivens</u> damages remedy to Plaintiff's Eighth Amendment failure to protect claim. While this factor can be determinative, the Court will now address the impact of other special factors relevant to this case. See <u>Ziglar</u>, 137 S. Ct. at 1865 ("[T]he existence of alternative remedies usually precludes a court from authorizing a Bivens action.").

**b.      Legislative action suggests that Congress does not want such a remedy**

Next, in <u>Ziglar</u>, the Supreme Court found that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation," and specifically noted that:

> Some 15 years after <u>Carlson</u> was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to <u>Bivens</u> suits. See <u>Porter v. Nussle</u>, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the <u>Carlson</u> damages remedy to cases involving other types of prisoner mistreatment.

<u>Ziglar</u>, 137 S. Ct. at 1865. The Supreme Court also noted that, because Congress's failure to provide a damages remedy "might be more than mere oversight," congressional silence on the availability of such a remedy may be "relevant" or "telling." <u>Id.</u> at 1849, 1862. Thus, the language and reforms imposed by the PLRA indicate that Congress would not approve an implied damages remedy for the claim presented here. Furthermore, given that <u>Bivens</u> is a judicially implied version of section 1983, it would violate separation of power principles if the implied remedy reached further than an express one. See <u>Ziglar</u>, 137 S. Ct. at 1857 (separation of powers principles counsels that Congress will usually be the proper body to decide whether damages should exist for a constitutional violation). Therefore, the special factors of Congressional action and separation of powers concerns counsel against extending the <u>Bivens</u> remedy to Plaintiff's

Eighth Amendment claim.

### c. The impact on governmental operations

Finally, "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide . . . includ[ing] the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." Ziglar, 137 S. Ct. at 1858. The Supreme Court has repeatedly acknowledged the significant impact of Bivens remedies on government operations. See Bush v. Lucas, 462 U.S. 367, 389 (1983) ("In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service."); Anderson v. Creighton, 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."); Schweiker v. Chilicky, 487 U.S. 412, 425 (1988) ("The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.").

In this instance, Plaintiff is not bringing suit to change prison policy but is suing an individual defendant who is alleged to have failed to protect him and is in fact alleged to have instigated attacks on Plaintiff. Applying a Bivens remedy in this instance would not cause unwarranted judicial interference with prison administration. However, the other factors discussed above counsel hesitation in extending a Bivens remedy to the claims alleged in this action. Further, there is no binding authority which has extended a Bivens remedy to a failure to protect claim and the Supreme Court "has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675).

For the foregoing reasons, the Court finds that special factors counsel hesitation in this context, and, thus, the Court should decline to recognize an implied Bivens Eighth Amendment failure to protect cause of action.

# IV.

# CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court should decline to recognize an implied <u>Bivens</u> Eighth Amendment failure to protect cause of action. Therefore, Plaintiff fails to state a claim upon which relief may be granted under <u>Bivens</u> and, consequently, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted. Since the deficiencies in Plaintiff's first amended complaint cannot be cured by amendment, leave to amend is not warranted. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. Defendant Preston's motion to dismiss, (ECF No. 47), be GRANTED WITHOUT LEAVE TO AMEND; and

2. This action be dismissed, with prejudice, for failure to state a claim upon which relief may be granted under <u>Bivens</u>.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 11, 2019**

UNITED STATES MAGISTRATE JUDGE